Wm. F. deHAAS, Charles J. Wiley, Ralph W. Riggins, and Colorado International Corp., a Colorado corporation, Plaintiffs,

v.

EMPIRE PETROLEUM COMPANY, a Colorado corporation, Eugene M. Stone and American Industries, Inc., a Nevada corporation, Defendants, Third-Party Plaintiffs, and Cross Claimants,

v.

William R. LOEFFLER, Third-Party Defendant, and Defendant on Cross Claim.

Civ. A. No. 66-C-167.

United States District Court
D. Colorado.
July 10, 1968.

James W. Heyer and Portis G. Welch, Denver, Colo., for plaintiffs.

Holmes Baldridge, Chicago, Ill., and Arlen S. Ambrose, Denver, Colo., for defendants, third-party plaintiffs and cross claimants.

John S. Carroll, Denver, Colo., for third-party defendant and defendant on cross claim.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

This is a derivative action brought by four stockholders of American Industries, Inc.,[1] for damages and equitable relief in connection with a merger which occurred in 1962 and allegedly involved violations of Rule 10b–5 promulgated by the Securities Exchange Commission pursuant to Section 10(b) of the Securities Exchange Act of 1934. The defendants have filed a third-party complaint[2] against William R. Loeffler, seeking indemnification and affirmative relief. The case is presently before the Court on defendants' motion for summary judgment of dismissal of the original complaint, and Loeffler's motion for summary judgment of dismissal of the third-party complaint. These questions have been briefed and argued by the parties and they now stand submitted.

The essential facts are as follows. In January, 1962, defendant Empire Petroleum Company was the sole owner of two subsidiaries—Mutual Supply Company and American Industries, Inc. Empire also effectively controlled Inland Development Corporation, owning 43% of its stock with the remaining 57% being dispersed among 1400 public shareholders.[3] Both wholly-owned subsidiaries were apparently in serious financial trouble. American's primary asset was a 50% interest in unproductive oil property, which it had originally purchased for approximately $1,000,000 but had an appraised value of only $34,800 in 1962. Mutual Supply Company, which operated combination service stations and merchandise stores, had suffered losses of $259,000 since its inception, and was allegedly suffering a continuing loss of $10,000 each month. The partially-owned subsidiary, Inland Development Corporation, owned assets worth approximately $1,000,000, but was producing little, if any, net income.

1. American is the survivor of a merger between Mutual Supply Company, American Industries, Inc., and Inland Development Corporation. It has been joined as a nominal defendant in this case.

2. While the action against Loeffler was also denominated a "cross-claim," it qualifies only as a third-party complaint under the Federal Rules of Civil Procedure.

3. Plaintiffs deHaas and Colorado International Corporation were among the public shareholders of Inland Development at the time of the transactions complained of. Plaintiffs Wiley and Riggins did not acquire stock in Inland until after the transactions occurred.

Defendant Stone held important positions in the management of all the corporations involved. He was president, chairman of the board, and chief executive officer of Empire, American and Mutual, and was president and a director of Inland Development Corporation. The plaintiffs allege that he dominated and controlled all of these companies.

The allegedly fraudulent transactions occurred during June and July of 1962, when a consolidation of American Industries, Mutual Supply and Inland Development took place. The consolidation was accomplished by Empire's sale of Mutual to American, and the subsequent merger of American and Inland Development, with American as the survivor. The plaintiffs allege that the consent of Inland's public shareholders was obtained through the use of proxy solicitations which contained the following misrepresentations and omissions:

(a) Failure to disclose that Mutual was a loss operation and that the surviving corporation had contracted to save Empire harmless from Mutual's creditors;

(b) Failure to disclose that American's stock had been arbitrarily valued at $5.00 per share, whereas it had little or no value as of the date of merger;

(c) Failure to disclose that Stone had exacted a salary of $20,000 from American to be paid with Inland's funds after the impending merger;

(d) Failure to disclose that Stone had obtained an option to purchase 100,000 shares of American stock for $1.00 per share;

(e) Falsely representing that the merged corporation could "look forward to rapid growth and expansion."

After the merger in which Empire gained a majority of the stock in the surviving corporation, the plaintiffs allege that encouraging letters were periodically sent to the shareholders until July 28, 1965, when the directors of Empire were compelled by a court order to send an annual report and financial statements to all shareholders. As a result of the information revealed in those reports, the plaintiffs initiated the present action.

## I. THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

Defendants' contentions in support of their motion are: (1) plaintiffs Wiley and Riggins were not shareholders of American at the time the transactions occurred, as required by Rule 23.1(1); (2) plaintiffs deHaas and Colorado International Corporation are barred from prosecuting the suit by the applicable statute of limitations; and, (3) plaintiffs have failed to make a prior demand on American's board of directors, as required by Rule 23.1(2). These questions will be discussed in the order in which they appear above.

### A. *The Standing of Plaintiffs Wiley and Riggins.*

Rule 23.1(1) provides that the complaint shall aver that the plaintiff "was a shareholder or member at the time the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law * * *." The transactions complained of in this case occurred between January and August of 1962. Since neither Riggins nor Wiley purchased his stock until sometime in 1964, both must be dismissed as parties to this suit. Their standing is not enhanced by the allegation in the complaint that the fraud is of a "continuing" nature. As indicated in Pergament v. Frazer, 93 F.Supp. 9, 12 (E.D.Mich. 1949), "every harm to a corporation is 'continuing' when someone has taken away some of its assets wrongfully." Rule 23.1(1) clearly requires that the plaintiff be a shareholder when the transactions occurred, and a mere allegation of "continuing" fraud cannot deprive the Rule of its obvious intent. See also, Matthies v. Seymour Mfg. Co., 270 F.2d 365, 373 (2nd Cir. 1959);

Weinhaus v. Gale, 237 F.2d 197, 200 (7th Cir. 1956); and Henis v. Compania Agricola de Guatemala, 210 F.2d 950 (3rd Cir. 1954).

Plaintiffs Riggins and Wiley will therefore be dismissed from the suit.

### B. *The Statute of Limitations Question.*

■ Since there is no federal statute of limitations for actions brought under Section 10(b), the applicable state statute of limitations must be applied. Hooper v. Mountain States Securities Corp., 282 F.2d 195 (5th Cir. 1960). The present case is therefore governed by the Colorado statute of limitations for fraud, C.R.S.1963, 87–1–10, which requires that suit be filed within three years after the discovery of fraud by the aggrieved party. Trussell v. United Underwriters, Ltd., 228 F.Supp. 757, 775 (D.Colo.1964).

■ The plaintiffs concede that this lawsuit was not filed within three years after the merger of 1962. However, they contend that the statute of limitations was tolled until 1965, because the cause of action was fraudulently concealed until that time and could not have been discovered through the exercise of reasonable diligence. See Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807 (1879), and Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946). The defendants argue that the facts conclusively demonstrate that the plaintiffs failed to exercise reasonable diligence in discovering their cause of action. They point out that both remaining plaintiffs had doubts about the advisability of the merger, that both were acquainted with key officers of Empire, and yet failed to make inquiries or protests against the action. However, the plaintiffs contend that while they doubted that the merger was good business practice, they relied upon Stone's integrity and the information provided them by the management. They assert that they had no reason to suspect fraud until they received the annual report and financial statements issued in July of 1965.

We conclude that the documents on file demonstrate a genuine issue of fact which can only be resolved at trial. A decision on this question would require us to make difficult judgments on the amount of knowledge available to the plaintiffs and the reasonableness of their conduct. In such circumstances, the summary judgment procedure is inappropriate. See Moore's Federal Practice ¶ 56.17[58]. Since the defendants have failed to clearly demonstrate that the plaintiffs were negligent in failing to protect their rights, the motion for summary judgment on the grounds that the action is time-barred must be denied.

### C. *The Failure to Make Demand on the Board of Directors.*

■ Rule 23.1(2) of the Federal Rules of Civil Procedure provides that the complaint in a derivative action shall allege "with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort." The plaintiffs in this case have not made an effort to exhaust their intracorporate remedies. However, the parties apparently agree that a demand on the *shareholders* would have been an empty formality. The plaintiffs have alleged a number of reasons as to why a demand on the board of directors would also have been futile.

■■ The question whether demand should be required is addressed to the sound discretion of the Court. See, e. g., 3A Moore's Federal Practice 3525, 13 Fletcher, Cyclopedia on Corporations 466 (1961), and cases cited therein. Normally, this decision is made solely on the basis of the allegations in the complaint. DePinto v. Provident Security Life Ins. Co., 323 F.2d 826, 830 (9th Cir. 1963), and Cohen v. Industrial Finance Corp., 44 F.Supp. 491 (S.D. N.Y.1942). However, since some question has been raised as to whether the complaint accurately reflected the facts,

we have considered evidence in the form of depositions, affidavits and exhibits to aid us in determining whether a demand was necessary. See DePinto v. Provident Security Life Ins. Co., 323 F.2d 826, 830 (9th Cir. 1963).[4]

At the time this lawsuit was filed, American's board of directors consisted of five men, two of whom were concededly hostile to the plaintiffs' claims and three whose status is more open to question. These three directors were chosen from outside the corporations involved, they did not participate in the transactions complained of, and indeed in certain instances they had voted contrary to Stone's wishes. In their depositions, all three of these directors denied that they were dominated by Stone, and all said they would have investigated the plaintiffs' claims and taken appropriate action. However, the evidence indicates that it is extremely unlikely that the board of directors would have taken any meaningful action in connection with the plaintiffs' claims. The three outside directors were elected by the defendants, and they had taken only a limited interest in the corporation's affairs. None of them had ever seen a statement of American's financial position, and they had little knowledge of the value or nature of its assets, the extent of its earnings and liabilities, or the general nature of its business.[5] One of the directors was unaware that the corporation had public shareholders, and the other two were only vaguely aware of this fact.[6] Furthermore, in at least one instance, two of the outside directors

acceded to Stone's wishes by voting for an acquisition which they were convinced was doomed to failure.[7] In short, while it cannot be said that the three outside directors were wholly dominated by Stone, they were dependent on Stone for information and did not evidence that they were the kind of active and aggressive majority that would be likely to undertake the difficult and demanding task of prosecuting a lawsuit for fraud against those who elected them.

There is an additional reason for excusing demand in this case. Since the defendants have absolute control over the elective process within the corporation, even an independent and aggressive majority of the board would have had little chance of conducting a vigorous and sustained investigation of the plaintiffs' claims. The board is elected for only one year, while this complex lawsuit has already required more than three years of constant investigation and preparation. In view of the defendants' bitter opposition to the plaintiffs' claims, it is highly improbable that they would have elected three successive boards of directors bent on continuing with this case.[8] It would be unrealistic to require demand in such circumstances. As stated in Cohen v. Industrial Finance Corp., 44 F.Supp. 491, 494 (S.D.N.Y. 1942), "the court should not cajole itself into believing that the members of a Board of Directors elected by the dominant and accused majority stockholder, after accusations of wrongdoing have been made, were selected for membership on the Board to protect the interests

---

4. While this question has been presented to the Court in the form of a motion for summary judgment, it is not necessary for either party to demonstrate the absence of genuine issues of fact. The demand requirement presents a threshold question for the Court, and it must be resolved prior to trial.

5. Deposition of Gerald T. Hart, 20–24; Deposition of John A. Gulik, 16–32; Deposition of Kenneth Cumming, 20–26.

6. Deposition of Gerald T. Hart, 24; Deposition of John A. Gulik, 19–20; Deposition of Kenneth Cumming, 23–24.

7. Deposition of Gerald T. Hart, 24; Deposition of John A. Gulik, 17–18.

8. If it were held that a demand on the board of directors as it was constituted in 1965 would not have been futile, the plaintiffs could be allowed to make a demand and file supplemental pleadings under Rule 15(d). Lynam v. Livingston, 257 F.Supp. 520 (D.Del.1966). Such a demand would obviously be futile, since American's assets have since been purchased by Empire Crude Oil Company, a wholly-owned subsidiary of Empire Petroleum Company.

of the minority stockholders and to assure a vigorous prosecution of effective litigation against the offending majority." Finally, we are of the opinion that this case, raising as it does serious questions, must be heard and determined on its merits.

█ We conclude that the defendants so dominated American Industries, Inc. that a demand on its board of directors would probably have come to naught; that in the long run it would have been a futile and useless gesture. Since this derivative action is the only effective method of litigating the plaintiffs' claims, the demand requirement of Rule 23.1(2) is excused.

## II. THIRD - PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

█ The third-party complaint seeks indemnification for all damages assessed against the defendants, as well as certain injunctive and affirmative relief against third-party defendant, William R. Loeffler. Under Rule 14 of the Federal Rules of Civil Procedure, the third-party complaint is a narrow device for seeking indemnification or contribution from a person "who is or may be liable to [the defendant] for all or part of the plaintiff's claim against him." It cannot be used as a method of bringing into controversy other matters which happen to have some relationship to the original action. 3 Moore's Federal Practice ¶ 14.04. Thus, all claims in the third-party complaint which seek affirmative or injunctive relief against the third-party defendant must be dismissed from the case. If the third-party plaintiffs wish to pursue these claims, a separate lawsuit should be filed in the appropriate court.

█ As to the claim for indemnification, the third-party plaintiffs allege that they did not knowingly mislead In-

land's public shareholders, and that if the shareholders were mislead, this was due to the fraudulent conduct of the third-party defendant. In support of this allegation, the third-party plaintiffs have produced evidence that, (as legal counsel for the corporations involved, Loeffler assisted in preparing the allegedly fraudulent proxy solicitations and they argue that it was his duty to make whatever disclosures the law required. They contend that any failure by Loeffler to make the appropriate disclosures stemmed from his desire to gain control of Empire and its affiliates, or failing in this, to destroy the entire establishment.

As to defendant (Stone, the plaintiffs cannot succeed on the original complaint unless they can prove to the jury's satisfaction that he knowingly participated in the allegedly fraudulent scheme) Trussell v. United Underwriters, Ltd., 228 F. Supp. 757, 767–770 (D.Colo.1964). Thus, if Stone is found guilty of fraud on the main complaint, he would be *in pari delicto* with Loeffler, and would not be entitled to indemnification from him under any construction of the facts developed during discovery) Since the evidence on file reveals no genuine issue of fact upon which indemnification in favor of Stone could be granted, his claim for indemnification will be dismissed.

█ However, this does not mean that Stone's third-party complaint must be dismissed in its entirety, since the facts alleged therein and developed during discovery present a genuine issue of fact on the question of contribution. Section 10(b) does not expressly allow contribution among wrongdoers, since civil liability under that section has been *implied by the courts*. However, those sections of the Securities Exchange Act which expressly provide for civil liability contain express provisions for contribution among intentional wrongdoers.[9] Since the specific liability pro-

---

**9.** Contribution clauses are found in § 11 of the 1933 Act (15 U.S.C. § 77K), and

in § 9 (15 U.S.C. § 78i) and § 18 (15 U.S.C. § 78r) of the 1934 Act. The

visions of the Act provide for contribution, it appears that contribution should be permitted when liability is implied under Section 10(b). III Loss, Securities Regulation 1739–40, n. 178 (1961). In view of the fact that Stone's third-party complaint alleges sufficient facts to state a claim for contribution, and the evidence on file shows a material question of fact on this issue, the motion for summary judgment to dismiss Stone's claim for contribution will be denied.[10]

Empire's third-party complaint stands on a different footing. A corporation is a principal which can be liable for fraud only through the conduct of its agents. Since Empire's liability would attach only through operation of law, an unfavorable verdict on the main complaint would not bar it from seeking indemnification from those officers and directors who directly participated in the fraud. See Handel-Mastschappij H. Albert De Bary & Co., NV v. Faradyne Electronics Corp., 37 F.R.D. (S.D.N.Y. 1964). The motion for summary judgment to dismiss Empire's claim for indemnification will be denied. Our summary order of July 3, 1968, dealing with these various motions is incorporated.

In conclusion, it is the Order of this Court that—

1. Plaintiffs Wiley and Riggins are dismissed from the suit for failure to meet the requirements of Rule 23.1 (1).

2. The defendants' motion for summary judgment on the ground that this suit is time-barred is denied, and the question will be determined at trial.

3. Demand upon the shareholders and board of directors of American Industries, Inc. is excused, since these demands would have been futile.

4. Third-party defendant's motion for summary judgment to dismiss third-party plaintiffs' claim for affirmative and injunctive relief is granted.

5. Third-party defendant's motion for summary judgment of dismissal against Empire's claim for indemnification is denied.

6. Third-party defendant's motion for summary judgment of dismissal against Stone's claim for indemnification is granted; however, Stone's third-party complaint will be allowed to stand as a claim for contribution.

contribution clause in Section 11(f) of the 1933 Act is typical of these provisions. It states:

"All or any one or more of the persons specified in subsection (a) shall be jointly and severally liable, and every person who becomes liable to make any payment under this section may recover contribution as in cases of contract from any person who, if sued separately, would have been liable to make the same payment, unless the person who has become liable was, and the other was not, guilty of fraudulent misrepresentation."

10. It should be noted, however, that Stone can succeed at trial only if he can prove that Loeffler was a fraudulent participant in the transactions complained of—a mere showing of negligence will not be enough. See footnote 9, supra.