[Civ. No. 46408. Second Dist., Div. Three. Dec. 31, 1975.]

PHILIP GARDNER, Cross-complainant and Appellant, v.
VIRGINIA MURPHY et al., Cross-defendants and Respondents.

## COUNSEL

Davis & Killian and Andrew C. Schutz for Cross-complainant and Appellant.

McDaniel & McDaniel and Donald C. McDaniel for Cross-defendants and Respondents.

## OPINION

COBEY, Acting P. J.—Cross-complainant, Philip Gardner, appeals from a judgment of dismissal (Code Civ. Proc., § 581c) of his cross-action for indemnity and contribution against certain codefendants in the main action for rescission and damages, namely, Virginia Murphy, et al.,[1] following the sustaining, without leave to amend, of their general demurrers to his first amended cross-complaint. The appeal lies. (Code Civ. Proc., § 904.1, subd. (a).)[2]

The fundamental question presented is whether the conduct of Gardner, the sole real estate salesman actively involved as an intermediary in the transaction, on the facts alleged in his first amended cross-complaint and on the facts alleged and/or admitted in the other pleadings on file in this case (all of which are subject to judicial notice both by the trial court and by this court (see Evid. Code, §§ 452, subd. (d)(1), 459 and Code Civ. Proc., § 430.30, subd. (a)) in negotiating the sale in December 1965 of a certain landlocked parcel of land in Malibu to the plaintiffs in the main action, the Philip Bentzes, was such that his cross-action for indemnity against certain of his co-defendants therein, namely (Murphy), the sellers of this parcel and their successors in interest, is barred.[3]

---

[1]These cross-defendants are Virginia Murphy, on the one hand, and Robert L. MacCallum, Jr., Donald A. Hesse and Security Pacific National Bank as executors of the Will of Paul A. Hesse, deceased, on the other. For convenience these cross-defendants will be referred to herein simply as "Murphy".

[2]Gardner has also appealed from the dismissal of his cross-action as against the Bank of America. In his opening brief, though, he states that this appeal "is not being pursued." Consequently we will treat it as abandoned.

Likewise cross-defendant Murphy advises us that the second cause of action in Gardner's first amended cross-complaint (that for contribution) is not before us. She is mistaken; it is. But since the issue has not been argued by either side, we will deem it abandoned and will not reach it.

We do wish to observe, though, that presumably Murphy's general demurrer to it was sustained on the ground that it was premature under Code of Civil Procedure section 875, subdivision (a). Therefore our failure to discuss the dismissal of this cause of action will not bar Gardner from reasserting it at the appropriate time by a new action for contribution. In terms of exact justice, it is unfortunate that California's contribution statute authorizes only a per capita allocation of loss among judgment tortfeasors (Code Civ. Proc., § 876, subd. (a)) rather than an allocation proportionate to fault as "pure" comparative negligence does in a tort action as between the plaintiff on the one hand, and all defendants on the other.

[3]The Bentzes have sued Gardner in the main action for damages arising from concealment and nondisclosure (eighth cause of action), misrepresentation (ninth cause of action), and negligent misrepresentation (tenth cause of action). These alleged causes of action incorporate by reference most of the first, third and fourth causes of action of their complaint.

## FACTS

In December 1965 Murphy owned a certain five-acre parcel of land in Malibu. On or about December 15, 1965, Murphy, through three agents (Gardner among them), in order to induce the Bentzes (the plaintiffs in the main action for rescission and damages) to purchase the parcel, falsely and fraudulently represented to them, among other things, that a 30-foot-wide easement of access for a road existed from Rameris Canyon Road to the Murphy parcel. In addition, during the negotiations between Murphy and the Bentzes for the sale of this parcel, Gardner pointed out to plaintiff, Philip Bentz, the exact location of the supposed road easement, both on the ground and on a certain map. In reliance on this supposed access and in ignorance of the actual fact that the parcel was completely landlocked, a fact which Murphy and Gardner, among others, did not reveal to the Bentzes, the latter on or about December 31, 1965, purchased the Murphy parcel for $39,853.48. In fact, according to their complaint, the Bentzes did not learn that this parcel was completely landlocked until on or about December 1, 1972.

Gardner, in his first amended cross-complaint which is before us, alleged that Murphy and two specified cross-defendant brokers, who were her agents, told him that there was an access easement serving the Murphy parcel. He did not, however, go on to allege that this was the 30-foot-wide road easement that the Bentzes had referred to in their complaint, but this may be inferred under the applicable rule of liberal construction that prevails with respect to pleadings challenged by a general demurrer. (See *Bank of America* v. *Vannini*, 140 Cal.App.2d 120, 126 [295 P.2d 102]; *Haldane* v. *Freedman*, 204 Cal.App.2d 475, 478 [22 Cal.Rptr. 445].)

## DISCUSSION

 Thus, the question presented becomes whether Gardner's alleged specific and affirmative misrepresentations to the Bentzes regarding the existence and location of the 30-foot-wide supposed right-of-way easement of access to the Murphy parcel was such wrongful conduct as to bar him from indemnification by Murphy even if he is able to prove the allegations of his cross-complaint against her and the other two brokers that his alleged misrepresentations to the Bentzes on the matter of access were based *solely* upon the misinformation on this point that she and her brokers allegedly gave him.

We hold that under the foregoing alleged circumstances Gardner's claim for indemnity lies on the basis of the following rationale. First, we note that this is a case of purely equitable indemnity, as contrasted with contractual indemnity, as Gardner in his first amended cross-complaint does not rely upon any contractual provision for his claim of indemnity.

Any equitable right of Gardner to transfer entirely to Murphy whatever liability he may have to the Bentzes in this transaction depends for its existence upon our concluding that his liability to them is secondary while that of Murphy's to them is primary. Stated otherwise, we must conclude that his negligence toward them was passive, while that of Murphy was active. In other words, to justify equitable indemnification, the wrongs of the respective tortfeasors must differ essentially in character or kind. (See *Card Constr. Co.* v. *Ledbetter*, 16 Cal.App.3d 472, 477 [94 Cal.Rptr. 570].)

■ This difference in the character or kind of wrong which each joint tortfeasor has done to the injured third person is thus the essential foundation for the shift in liability between them accomplished by means of indemnification. This transfer in liability is not done simply because the two tortfeasors are not *in pari delicto* (see *Herrero* v. *Atkinson*, 227 Cal.App.2d 69, 74 [38 Cal.Rptr. 490, 8 A.L.R.3d 629]) or because the negligence or wrong of one is greater than that of the other as in pure comparative negligence. (See *Li* v. *Yellow Cab Co.*, 13 Cal.3d 804, 829 [119 Cal.Rptr. 858, 532 P.2d 1226]; *American Can Co.* v. *City & County of San Francisco*, 202 Cal.App.2d 520, 525-526 [21 Cal.Rptr. 33].) Equitable indemnity is not a sharing in liability in proportion to fault as pure comparative negligence is. It is instead a total and complete transfer of liability that is equitably justified by the difference in character or kind of the wrongs of the two tortfeasors. (See *Alisal Sanitary Dist.* v. *Kennedy*, 180 Cal.App.2d 69, 75 [4 Cal.Rptr. 379].)

■ This would seem to be the situation in this case because Murphy is alleged to have been the source of the intentional misrepresentations alleged and Gardner, allegedly, merely the negligent conduit of them to the Bentzes. In such a situation his liability to the Bentzes would be based upon his negligence as a person expert in real estate matters in not seeing to it that the existence and location of the 30-foot-wide right-of-way easement of access was actually verified before the Bentzes purchased the property. (See *Wilson* v. *Hisey*, 147 Cal.App.2d 433, 438 [305 P.2d 686]; *Schoenberg* v. *Romike Properties*, 251 Cal.App.2d 154,

162 [59 Cal.Rptr. 359]; *Ford* v. *Cournale,* 36 Cal.App.3d 172, 180 [111 Cal.Rptr. 334].) Murphy's liability, on the other hand, if both the Bentzes and Gardner prove their respective cases against her, would rest upon the fact that she (presumably intentionally) originated the alleged misrepresentations regarding access. As between the intentional originator and the negligent intended transmitter of alleged misrepresentations, the liability and negligence of the former would appear to be primary and active while that of the latter would seem to be secondary and passive.[4] (Cf. *Aerojet General Corp.* v. *D. Zelinsky & Sons,* 249 Cal.App.2d 604, 607 [57 Cal.Rptr. 701]; *Kennedy* v. *Colt* (1959) 216 Ore. 647 [339 P.2d 450, 453]; Rest., Restitution (1937) §§ 76, 86, 89.)

In the leading case of *Cahill Bros., Inc.* v. *Clementina Co.,* 208 Cal.App.2d 367, 381-382 [25 Cal.Rptr. 301], Justice Molinari stated: "The crux of the inquiry [whether a right to indemnity exists] is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform the duty imposed upon him by law. [Citations omitted.] The thrust of these cases is that if the person seeking indemnity personally participates in an affirmative act of negligence, or is physically connected with an act or omission by knowledge or acquiescence in it on his part, or fails to perform some duty in connection with the omission which he may have undertaken by virtue of his agreement, he is deprived of the right of indemnity. *In other words,* the person seeking indemnity cannot recover if his negligence is active or affirmative as distinguished from negligence which is passive." (Italics added.) Later California cases quoting *Cahill Bros.* have ignored the fact that this disqualifying personal participation in or physical connection to the wrong done the third person was stated simply as an alternative to the more traditional active versus passive negligence test and instead have added it as a second precondition to the right to equitable indemnity. (See, e.g., *Atchison T. & S. F. Ry. Co.* v. *Lan Franco,* 267 Cal.App.2d 881, 886-887 [73 Cal.Rptr. 660]; *Standard Oil Co.* v. *Oil, Chemical Etc. Internat. Union,* 23 Cal.App.3d 585, 590-591 [100 Cal.Rptr. 354].) In our view it is not a second precondition to the existence of the right but merely a restatement of the only precondition—namely, that the wrongs of the two joint tortfeasors differ in character or kind, however such difference may be categorized.

---

[4]This conclusion is premised on the supposition that Gardner did not independently endorse Murphy's misrepresentations, did not know that they were false and did not add his own misrepresentations to those of Murphy. In other words, he did not make Murphy's misrepresentations his own.

Although we have not discovered any prior California decisions on this precise issue, there are several cases reflecting reasoning similar to ours. In *Schoenberg* v. *Romike Properties, supra,* 251 Cal.App.2d 154, a real estate broker was not permitted to maintain a cross-action for "reimbursement" against the buyer who fabricated an appraiser's report on certain property he was offering as security to the sellers. The *Schoenberg* court did not deny indemnification simply because the brokers "participated" in the sale or because they transmitted the report to the sellers without investigating its accuracy. Rather, the opinion stressed the additional fact that the brokers engaged in "their own" misrepresentations to the sellers—that is, specifically dissuading one of the sellers from inspecting the securing property by assuring her that she would not be able to gauge its true value merely by seeing it. (*Id.,* at pp. 161, 163.)

In *Banville* v. *Schmidt,* 37 Cal.App.3d 92 [112 Cal.Rptr. 126], a broker unsuccessfully attempted to obtain indemnity from the escrow agent based upon the agent's negligent misrepresentation of the state of the title of a certain parcel of land. Although the opinion analyzes the problem in terms of who has standing to seek damages for breach of contract (see *Biakanja* v. *Irving,* 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358]), the court noted that indemnity was improper because the liability of the would-be indemnitee was not in any way due to conduct done in reliance upon the misrepresentation of the would-be indemnitor. (*Id.* at p. 100.) Of course, the instant case presents this exact question; *Banville* did not.[5]

In *Standard Oil Co.* v. *Oil, Chemical Etc. Internat. Union, supra,* 23 Cal.App.3d 585, the oil company sought indemnity based upon its merely negligent conduct in comparison with the allegedly reckless or intentionally wrongful conduct of the union. The court dismissed the indemnification cause of action on the ground that since the oil company was an active tortfeasor, it could not obtain indemnification even from a recklessly or intentionally negligent tortfeasor. The label "active tortfeasor" was pinned upon the oil company because its truck "physically caused the injury" to the third party. (*Id.* at p. 589.) The *Standard Oil* decision specifically stated that the oil company was not "merely an instrument or tool which caused the physical result in a situation caused

---

[5]It appears that in *Banville* the question now before us, i.e., a demand for indemnification by the broker against the misrepresenting seller, was decided by the trial court in favor of the broker. (*Id.* at p. 95.) This result, however, was not appealed by the seller.

entirely by the actions of the [union]." *(Id.)* We believe that this description of *instrumentality* precisely describes Gardner's alleged role in the transaction which injured the Bentzes.

Lastly, we derive support for our conclusion in favor of indemnity from federal securities fraud cases. In *B & B Investment Club* v. *Kleinert's, Inc.* (E.D. Pa. 1975) 391 F.Supp. 720, 724, the court ruled that an accounting firm could maintain an indemnity action against a third party defendant who allegedly provided intentionally false information which the accountants used in certain corporate financial statements without verification. Such indemnity is established in federal securities law except where the would-be indemnitee faces liability because he intentionally utilized the misrepresentations created by others.[6] (See *deHaas* v. *Empire Petroleum Company* (D. Colo. 1968) 286 F.Supp. 809, 816, as modified in (10th Cir. 1970) 435 F.2d 1223; *Globus* v. *Law Research Service, Inc., supra,* 418 F.2d at p. 1288; *Alexander & Baldwin, Inc.* v. *Peat, Marwick, M. & Co.* (S.D.N.Y. 1974) 385 F.Supp. 230, 238-239.)

The judgment of dismissal of the cross-action, as to cross-defendants Virginia Murphy and Robert L. MacCallum, Jr., Donald A. Hesse and Security Pacific National Bank as co-executors of the will of Paul A. Hesse, deceased, is reversed insofar as it dismisses the cause of action for indemnity. Otherwise it is affirmed.

Allport, J., and Potter, J., concurred.

---

[6]The federal courts have crafted another exception to the right of indemnity where it would thwart the public policy behind civil liability under the securities laws which were "designed not so much to compensate the defrauded purchaser as to promote enforcement of the Act and to deter negligence by providing a penalty for those who fail in their duties." (*Globus* v. *Law Research Service, Inc.* (2d Cir. 1969) 418 F.2d 1276, 1288.) That exception is not applicable here. The potential liability of a fiduciary to his principal was established at common law solely to ensure the principal's compensation when damaged by the fiduciary's breach and not to inflict a penalty upon the fiduciary. (Rest.2d Agency (1958) § 401, com. b, p. 238.)