[No. D020486. Fourth Dist., Div. One. Aug. 13, 1997.]

MARK S. ROBINSON et al., Plaintiffs and Appellants, v.
ANNE MARIE GROSSMAN et al., Defendants and Respondents.

636

**Counsel**

Barnhorst, Schreiner & Goonan and Gregory P. Goonan for Plaintiffs and Appellants.

Anne Marie Grossman, in pro. per., McInnis, Fitzgerald, Rees & Sharkey, James J. Reynolds and Cheryl D. Davidson for Defendants and Respondents.

John D. Guerry as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

KREMER, P. J.—This case stems from the sale of a home by John E. Helm[1] and Anne Marie Grossman to Mark S. Robinson and Susan K. Robinson. The Robinsons appeal a judgment entered after Grossman, Prudential California Realty, the listing broker, and its agent Marti Gellens-Stubbs obtained defense verdicts. The Robinsons contend the court misunderstood the disclosure duties of a seller's real estate agent to prospective purchasers, and as a result incorrectly excluded expert witness testimony and refused jury instructions on the issue. They also contend the court abused its discretion in excluding evidence of postescrow events, and in awarding Grossman attorney fees and other costs. We affirm.

I

### FACTUAL AND PROCEDURAL BACKGROUND

Helm, an architect, designed and built a large home in 1989. Because the hilly terrain would not support a conventional foundation, a pier and grade beam foundation was used. Helm and Grossman moved into the home in 1990, but listed it for sale with Prudential in March 1991.

On the real estate transfer disclosure statement, Helm and Grossman represented they were unaware of any significant defects in the foundation, exterior walls, windows, ceilings or other components of the home. When Gellens-Stubbs inspected the property, she noted hairline stucco cracks, which Helm assured her were only cosmetic. She did not note them on her portion of the disclosure statement, but wrote "property appears to be in good condition . . . . I see nothing to contradict what seller has mentioned. . . ." Later, Gellens-Stubbs noticed interior paint peeling at a dining room window and Helm advised it was caused by water infiltration during construction which had been remedied. Gellens-Stubbs did not add this information to the disclosure statement.

When the Robinsons looked at the home several times in May 1991, they saw the stucco cracks. The Robinsons discussed them with their real estate

---

[1]There is no issue on appeal as to Helm.

agent, Gracinda Maier, who recommended they have the home professionally inspected. Helm also advised the Robinsons "the cracks were caused by the finish of the house, which is called a Santa Barbara finish, and there was a product called elastomeric that . . . would alleviate the stucco cracks."

Helm and Grossman accepted the Robinsons' offer of $653,750. The parties signed a real estate purchase contract on May 22, 1991, under which Helm and Grossman were required to provide the Robinsons with copies of the geological report by Ninyo & Moore. The parties also initialed a preprinted paragraph giving the Robinsons the right to have geological and other inspections and testing done on the home, and if conditions unsatisfactory to the Robinsons were discovered, which Helm and Grossman were unwilling or unable to correct, the Robinsons could cancel the agreement.

On May 24, 1991, Maier added the following remarks to the disclosure statement: "My visual inspection found numerous cracks in the house. Buyer's agent recommends buyer to have property inspected by a professional home inspector and have the land checked by a geologist." Either then or sometime earlier, Gellens-Stubbs also added the following to the disclosure statement: "Stucco cracks on home are cosmetic in nature according to seller because of finish & type of stucco."

The Robinsons hired Amerispec Home Inspection Service, and Robert Brand conducted an inspection on May 30, 1991; Helm, Grossman, Gellens-Stubbs and Mr. Robinson were present. Brand noticed paint discoloration around the dining room window, and Helm explained it was caused by leakage during construction. Brand also found a "very old" water stain, which was "almost impossible" to see, on the front entryway ceiling and wall, and "normal settling cracking" of the stucco. As to the latter, Helm told Brand "elastomeric coating . . . could be put on the stucco that would stop the cracking." Brand's written report to the Robinsons stated there were "[n]ormal settling cracks" in the stucco, and water stains at the wall and ceiling juncture in the foyer and in the ceiling of the sitting room. Brand found no soils-related distress or other significant problem with the home. With regard to a geotechnical inspection, the Robinsons opted to rely upon Ninyo & Moore's report and its assurance "the house was very well built, . . . [and] was not going anyplace . . . ."

In July 1991 during a final inspection, Mrs. Robinson first noticed the water stains on the ceiling and wall in the entryway area. Grossman took her and Gellens-Stubbs to a deck, showing them the water intrusion came from

a small hole which had been repaired. Grossman assured Mrs. Robinson the deck was not leaking. Mrs. Robinson also saw that some of the stucco cracks appeared to have been patched. Grossman told her the cracking was only cosmetic and could be remedied with a coating product. Gellens-Stubbs wrote in a buyer's property inspection report, "per seller—stucco cracks are cosmetic." She also sent Mr. Robinson a letter advising: "The ceiling and wall in the downstairs sitting area will be repainted where stains are," and "[a]ccording to seller, the stucco cracks are cosmetic in nature and were patched with a stucco and glue mixture." Escrow closed shortly thereafter.

When the Robinsons attempted to have a swimming pool installed on the property a few weeks later, the excavation collapsed, requiring backfilling and recompaction. They sued Helm, Grossman, Gellens-Stubbs and others, for professional negligence and negligent and intentional misrepresentation. They alleged the home contained "numerous defects in its roof, exterior walls, windows, [and] insulation, . . ." and suffered "geotechnical and soils related distress," which defendants knew but failed to disclose.

The court granted Prudential's and Gellens-Stubbs's motion for nonsuit on the fraud cause of action. The jury exonerated Grossman, Prudential and Gellens-Stubbs from any liability. In its special verdict, the jury found Prudential and Gellens-Stubbs did not breach the professional standard of care. As to the negligent misrepresentation cause of action, the jury found Prudential and Gellens-Stubbs misrepresented a "past or existing material fact," but the misrepresentation was not "made without a reasonable ground for believing it to be true." The jury found Helm liable for professional negligence and negligent and intentional misrepresentation, but awarded the Robinsons only $16,827 of the $719,130 they sought. Grossman then moved for attorney fees and other costs from the Robinsons, and the court awarded her $10,980.13.

On appeal, the Robinsons contend Prudential and Gellens-Stubbs's disclosure duty included the duty to independently verify or disclaim the accuracy of Helm's and Grossman's representations regarding the exterior stucco cracks, entryway area water stains and dining room paint peeling; because the court erroneously disagreed, it incorrectly excluded expert witness testimony and jury instructions on the issue. The Robinsons also contend the court abused its discretion in excluding evidence of postescrow communications among Mr. Robinson, Gellens-Stubbs, Helm and Grossman, and in awarding attorney fees to Grossman.

## II

### DISCUSSION

### A

#### *Duty of Care to Prospective Buyers*

■ In *Easton v. Strassburger* (1984) 152 Cal.App.3d 90 [199 Cal.Rptr. 383, 46 A.L.R.4th 521] (*Easton*), the court first pronounced the duty of the seller's broker to potential purchasers to both inspect and disclose. "[T]he duty of a real estate broker, representing the seller, to disclose facts . . . includes the affirmative duty to conduct a reasonably competent and diligent inspection of the residential property listed for sale and to disclose to prospective purchasers all facts materially affecting the value or desirability of the property that such an investigation would reveal." (*Id.* at p. 102, fn. omitted.)

In *Easton, supra,* 152 Cal.App.3d 90, agents of the seller's broker observed "red flags" indicative of soils problems, but did not obtain a soils report or inform the buyer there were potential soils problems. (*Id.* at p. 96.) The purchaser sued after massive movement of fill soils caused the foundation to settle and resulting damages; the jury found the broker and others had been negligent. (*Id.* at p. 97.) In concluding the jury's verdict was supported by substantial evidence, the appellate court reasoned: "Real estate agents hold themselves out to the public as professionals, and, as such, are required to make reasonable use of their superior knowledge, skills and experience within the area of their expertise. [Citation.] Because such agents are expected to make use of their superior knowledge and skills, which is the reason they are engaged, and because the agents in this case were or should have been alert to the signs of soils problems earlier described, the jury was well within the bounds of reason when it concluded that *a reasonably diligent and competent inspection of the property would have included something more than a casual visual inspection and a general inquiry of the owners.*" (*Easton, supra,* 152 Cal.App.3d at pp. 104-105, italics added.)

In response to *Easton,* and at the urging of the California Association of Realtors, the Legislature added a new article to the Civil Code[2] (section 2079 et seq.) entitled "Duty to Prospective Purchaser of Residential Property." (Stats. 1985, ch. 223, § 2, p. 1221.) The article contained an express statement of Legislative intent, which was amended and codified in 1994 as follows: "(a) The Legislature hereby finds and declares all of the following:

---

[2]All statutory references are to the Civil Code unless otherwise specified.

(1) That the imprecision of terms in the opinion rendered in *Easton* . . . , and the absence of a comprehensive declaration of duties, standards, and exceptions, has caused insurers to modify professional liability coverage of real estate licensees and has caused confusion among real estate licensees as to the manner of performing the duty ascribed to them by the court. [¶] . . . [¶] (4) That sections 2079 to 2079.6, inclusive, of this article should be construed as a definition of the duty of care found to exist by the holding of *Easton* . . . , and the manner of its discharge . . . . [¶] (b) It is the intent of the Legislature to codify and make precise the holding of *Easton* . . . . It is not the intent of the Legislature to modify or restrict existing duties owed by real estate licensees."[3] (§ 2079.12; see also Ins. Code, § 11589.5, which prohibits insurers from excluding coverage for a breach of § 2079 duties.)

The *Easton* duty is set forth in section 2079 as follows: "(a) It is the duty of a [licensed] real estate broker or salesperson, . . . to a prospective purchaser of residential real property . . . to conduct a reasonably competent and diligent visual inspection of the property offered for sale and to disclose to that prospective purchaser all facts materially affecting the value or desirability of the property that an investigation would reveal . . . ."[4] This court has observed, "[t]he dual nature of this duty does not sound exclusively in negligence. While the first prong of the obligation (inspection) embodies traditional negligence concepts, breach of the second prong (disclosure of material facts) encompasses actionable conduct associated with both negligence and negligent misrepresentation." (*Loken* v. *Century 21-Award Properties* (1995) 36 Cal.App.4th 263, 271 [42 Cal.Rptr.2d 683].)

In 1985 the Legislature added another article to the Civil Code (§ 1102 et seq.) entitled "Disclosures Upon Transfer of Residential Property." (Stats. 1985, ch. 1574, § 2, p. 5788.) Before execution of a sales contract, the seller is required to deliver a statutory real estate transfer disclosure statement to the buyer, which contains a checklist to give notice of problems or potential problems with the property, and cautions that the representations are made

---

[3]Subdivision (b) of section 2079.12 has been interpreted to mean the Legislature had no intention of changing the existing law "requir[ing] agents to disclose material defects known to the broker, but unknown to the prospective buyer. [Citation.] A failure to disclose such facts gave rise to a cause of action for fraudulent concealment. [Citation.]" (*Williams* v. *Wells & Bennett Realtors* (1997) 52 Cal.App.4th 857, 863 [61 Cal.Rptr.2d 34].)

[4]The inspection required by section 2079 "does not include or involve an inspection of areas that are reasonably and normally inaccessible to such an inspection . . . ." (§ 2079.3.) The standard of care is that which "a reasonably prudent real estate licensee would exercise and is measured by the degree of knowledge through education, experience, and examination, required to obtain a license . . . ." (§ 2079.2.) Nothing in the article, however, "relieves a buyer or prospective buyer of the duty to exercise reasonable care to protect himself or herself, including those facts which are known to or within the diligent attention and observation of the buyer or prospective buyer." (§ 2079.5.)

by the sellers, not the real estate agents, and that the potential buyers may wish to obtain professional advice or inspections of the property. (§§ 1102.3, 1102.6.) An agent representing the seller must also complete his or her portion of the disclosure form.[5] The disclosures and acts required under the article "shall be made in good faith," which means "honesty in fact in the conduct of the transaction." (§ 1102.7.)

The Robinsons concede section 2079 is applicable to their "broker negligence" and negligent misrepresentation causes of action against Prudential and Gellens-Stubbs, but contend its second prong, the duty of disclosing material facts, includes the duty to either independently verify the accuracy of the seller's information or disclaim knowledge of the accuracy of the information. They assert the court erred in excluding expert witness testimony and refusing jury instructions regarding the same.[6]

The Robinsons rely principally upon Miller and Starr, who write in their treatise: "A broker as a professional is more than a mere 'middleman' or messenger putting the parties together; when information from the seller is transmitted to the buyer by the broker, the broker has a duty to verify the accuracy of that information (or disclaim knowledge of its accuracy)." (2 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 3:27, pp. 162-163, fns. omitted.) Miller and Starr cite *Gardner* v. *Murphy* (1975) 54 Cal.App.3d 164 [126 Cal.Rptr. 302], where buyers sued the seller and his real estate agent for misrepresenting the existence of an access easement when the property was actually landlocked. The sole issue on appeal was whether the agent could pursue an indemnity claim against the seller. The court observed that since only the seller was alleged to have been the source of intentional misrepresentations, the agent was merely "the negligent conduit of them to the [buyers]. In such a situation his liability to the [buyers] would be based upon his negligence *as a person expert in real estate matters* in not seeing to it that the existence and location of the 30-foot-wide right-of-way easement of access was actually verified before the [buyers] purchased the property. [Citations.]" (*Id.* at pp. 168-169.)

---

[5]That portion of the form provided at the relevant time:

"THE UNDERSIGNED, BASED ON THE ABOVE INQUIRY OF THE SELLER(S) AS TO THE CONDITION OF THE PROPERTY AND BASED ON A REASONABLY COMPETENT AND DILIGENT VISUAL INSPECTION OF THE ACCESSIBLE AREAS OF THE PROPERTY IN CONJUNCTION WITH THAT INQUIRY, STATES THE FOLLOWING:

_____

_____" (§ 1102.6.)

[6]Normally, we review evidentiary and instructional claims under an abuse of discretion standard. However, the construction of statutes presents an issue of pure law, and thus we review the matter de novo. (*Dean W. Knight & Sons, Inc.* v. *State of California* ex rel. *Dept. of Transportation* (1984) 155 Cal.App.3d 300, 305 [202 Cal.Rptr. 44].)

Miller and Starr also cite *Bevins* v. *Ballard* (Alaska 1982) 655 P.2d 757, an Alaska Supreme Court case in which the buyers sued the sellers' broker for "innocent misrepresentation" in failing to verify the accuracy of the sellers' representations regarding the capacity of a well. Holding a broker may be liable for merely conveying misinformation from the seller, the court reasoned "[a]s between the broker who communicated the misrepresentation, and the purchaser whose only fault was to rely on the broker, we think it preferable that the broker bear any loss caused by misrepresentation. Brokers, in turn, *can protect themselves from liability by investigating the owner's* [*own*] statements, or by disclaiming knowledge . . . . [Citation.]" (*Id.* at p. 763, italics added.)

These authorities fail to establish any California common law disclosure duty of the seller's agent to the buyers in the context of a negligence action. To the contrary, *Easton* was the first case in which such a duty was imposed. (*Easton*, *supra*, 152 Cal.App.3d at p. 99.) *Bevins* v. *Ballard*, *supra*, 655 P.2d 757 has never been cited in a reported California opinion, and as recently noted by the Alaska Supreme Court, was superseded in 1993 by statutory framework similar to that found in section 1102 et seq. (*Amyot* v. *Luchini* (Alaska 1997) 932 P.2d 244, 247.)

■ In *Gardner* v. *Murphy*, *supra*, 54 Cal.App.3d 164, the issue was not before the court, and a case cannot stand for a proposition neither discussed nor analyzed. (*DCM Partners* v. *Smith* (1991) 228 Cal.App.3d 729, 739 [278 Cal.Rptr. 778].) Further, in *Gardner* the only agent involved in the transaction was the seller's agent, who may have under dual agency concepts had fiduciary duties to the buyer. (2 Miller & Starr, Cal. Real Estate, *supra*, § 3.8, pp. 34-36.) Indeed, in the cases the *Gardner* court cited, the agent represented the buyer, not the seller, and liability was based upon a fiduciary relationship.[7] (*Gardner* v. *Murphy*, *supra*, 54 Cal.App.3d at pp. 168-169.)

■ We find no support for the Robinsons' argument section 2079's disclosure duty includes a duty to independently verify or disclaim the accuracy of the seller's representations, and we do not interpret section 2079 in that manner. To the contrary, in enacting section 2079, the Legislature sought to foster availability of professional negligence insurance by eliminating the implication in *Easton* that a seller's agent could have negligence

---

[7]This court recently held that where the buyer's agent had no actual or imputed knowledge of soils subsidence at a condominium development or related litigation, it satisfied its fiduciary duty by complying with the standard of section 2079. (*Padgett* v. *Phariss* (1997) 54 Cal.App.4th 1270, 1286 [63 Cal.Rptr.2d 373].) On the other hand, in *Salahutdin* v. *Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 563 [29 Cal.Rptr.2d 463], the court held the buyer's agent breached fiduciary duties by failing to verify or disclaim the seller's representations regarding parcel size.

liability for relying in good faith upon the seller's representations or failing to discharge a vague obligation to obtain professional inspections or reports to confirm those representations.

In other words, under the post-*Easton* statutory scheme, once the sellers and their agent make the required disclosures, it is incumbent upon the potential purchasers to investigate and make an informed decision based thereon. In making the required disclosures, the sellers' agent is required only to act in good faith and not convey the seller's representations without a reasonable basis for believing them to be true. Accordingly, we conclude the trial court correctly struck the expert witness's testimony and refused jury instructions expanding the duty of a seller's agent to the buyer beyond that set forth in section 2079.

While the above is dispositive, we also note the Robinsons have shown no prejudice by the court's rulings. The obvious purpose of the urged disclaimer duty would be to prevent buyers from being misled to their detriment. It is undisputed the Robinsons had *actual* knowledge of each of the three "red flags" of which they now complain well before escrow closed. They saw the stucco cracks during preoffer site visits, during which Helm, not Gellens-Stubbs, explained their cause. Gellens-Stubbs noted on the disclosure statement the stucco cracks were cosmetic "*according to seller*, . . ." and on the buyer's disclosure statement, "*per seller*—stucco cracks are cosmetic." (Italics added.) Gellens-Stubbs also sent Mr. Robinson a letter again advising "[a]*ccording to seller*, the stucco cracks are cosmetic in nature and were patched with a stucco and glue mixture." (Italics added.)

During Amerispec's inspection, which Mr. Robinson attended, it was Helm, not Gellens-Stubbs, who explained the paint peeling around the dining room window was caused by a leak which had been remedied. Likewise, it was Grossman, not Gellens-Stubbs, who later assured Mrs. Robinson the water staining in the entryway was caused by a leak which had been fully repaired. Under the circumstances, the Robinsons could not have reasonably believed the representations came from Gellens-Stubbs, or that she either verified them or vouched for their accuracy. Moreover, both Gellens-Stubbs and Maier, the Robinsons' agent, encouraged them to obtain independent inspections to verify the causes of the "red flags." The Robinsons failed to obtain a geotechnical inspection, and their home inspector confirmed Helm's and Grossman's representations.

Further, although the special verdict indicates the jury found some good faith misrepresentation on Gellens-Stubbs's part, the Robinsons have cited no evidence showing the information regarding the stucco cracks, water

staining or paint peeling was inaccurate. They assert in their opening brief: "Ultimately, both the water stains and the stucco cracks that were the subject of Gellens-Stubbs' incomplete and misleading disclosure proved to be warning signs of tremendous problems with the . . . [h]ome." In support, they cite only Mr. Robinson's testimony that during storms in December 1991 and January 1992 rain infiltrated the home's front door, some windows and the roof. There was no evidence, however, that *those* leaks were related to the "red flags," or existed when escrow closed, and thus the court sustained Gellens-Stubbs's objection to the question of whether she disclosed any of the leaks to the Robinsons.

The Robinsons' geologist, Ralph K. Jeffery, testified the pool excavation failure was caused by an unstable ancient landslide and creeping soils, the latter of which also caused interior wall cracks and uneven floors in the home. Jeffery admitted, however, that during initial visits to the property he saw no soils-related distress in the home; rather, such manifestations did not appear until 1992.

When asked whether the stucco cracks were nonetheless "signs of possible earth-movement damage to the home," Jeffery responded, "That would be one explanation for them." However, he had done no destructive testing to determine what caused the cracks, and they could be attributable to "too thin of stucco coat, improper waterproofing, a whole litany of architectural things and probably some things I can't even guess what they are because I don't have expertise . . . as an architect." Robert K. Burkett, the Robinsons' civil and structural engineer, agreed it could not be determined whether the stucco cracks were related to earth movement without performing testing. Peter Curry, the defense structural engineer, testified that even in 1993, he saw no stucco cracking attributable to foundation movement.

In sum, the Robinsons well knew the representations regarding the "red flags" were exclusively those of Helm and Grossman, and they have shown no detrimental reliance upon anything Gellens-Stubbs disclosed or failed to disclose. Thus, under any scenario the Robinsons' arguments fail. (Cal. Const., art. VI, § 13 [no judgment shall be set aside or new trial granted unless evidence exclusion or instructional error has resulted in miscarriage of justice].)

B

*Exclusion of Postescrow Evidence*

Prudential and Gellens-Stubbs brought an *in limine* motion to exclude Gellens-Stubbs's notes and other evidence of postescrow communications among the parties regarding the stucco cracks. The court granted the

motion, but clarified that "[f]acts memorialized in writing that occurred prior to the close of escrow are not within that motion." During trial, however, and without reviewing the Robinsons' proffered evidence, the court determined "[n]othing [Gellens-Stubbs] did post escrow is coming in."

The Robinsons contend the court abused its discretion in excluding the evidence because it was relevant to show (1) Prudential and Gellens-Stubbs continued to represent Helm and Grossman after the sale, and thus "were under a continuing duty to be honest in all of their dealings with the Robinsons and to disclose all material facts about the condition of the . . . [h]ome"; (2) Gellens-Stubbs "knew that independent verification of the representations of Helm and Grossman was required by the standard of care"; (3) Gellens-Stubbs knew Helm wanted to sell the home "as is," and thus "knew the problems with the . . . [h]ome were potentially more extensive than she disclosed," and (4) Gellens-Stubbs's testimony lacked credibility. Each contention is without merit.

The duties of real estate agents, even to their own clients, terminate "when the subject matter of the agency is sold or otherwise disposed of . . . ." (*Menzel* v. *Salka* (1960) 179 Cal.App.2d 612, 623-624 [4 Cal.Rptr. 78].) Prudential and Gellens-Stubbs had no postescrow duty to make any disclosures to the Robinsons, and in any event the proffered evidence shows there was nothing to disclose. Rather, it shows only that Mr. Robinson began complaining to Helm, Grossman, Gellens-Stubbs and others about the stucco cracking a few months after escrow closed, and attempts were made to resolve the problem short of litigation.

As discussed above, Gellens-Stubbs had no duty under section 2079 to independently verify Helm's and Grossman's representations, and her belief to the contrary would be immaterial. Moreover, the excluded evidence does not show Gellens-Stubbs believed she had such a duty. In memorializing a postescrow telephone conversation with Grossman regarding Mr. Robinson's complaints, Gellens-Stubbs wrote: "I suggested to [Helm and Grossman] to get their own stucco person to the house to get an opinion re: alastaplast & see if it just needs to be patched like they say it does. They said [Mr. Robinson] wants nothing to do w[ith] that [and] told them he was turning it over to lawyers. I told them they have every right to get someone of their choice to look [at the] house because in court they'll need something in writing from an expert, not just their opinion." The necessity of having expert testimony at trial is, of course, unrelated to a real estate licensee's disclosure duty.

After the sale was consummated and Mr. Robinson began complaining, Helm apparently reminded Gellens-Stubbs he wanted to sell the home "as

is," but she dissuaded him. Gellens-Stubbs's note memorializing that conversation does not indicate she believed, or had reason to believe, the "red flags" apparent at the close of escrow augured future calamity. Moreover, no prejudice could possibly arise from the exclusion of the note because in response to questioning by the Robinsons' counsel, Helm testified he wanted to sell the home "as is," but Gellens-Stubbs talked him out of it.

Lastly, none of the postescrow evidence the Robinsons sought to introduce evidenced any lack of credibility on Gellens-Stubbs's part. They rely primarily upon a draft letter Helm prepared and suggested Gellens-Stubbs send to the Robinsons. In it, Helm wrote, "[stucco c]racks by their very nature are dynamic. That is they change with heat, cold, moisture and various other factors. Anyone [sic] of the [Robinsons'] inspectors should have mentioned that some of them might become larger *or be an indication of a greater problem.*" (Italics added.) In the copy apparently obtained from Prudential's file, the italicized typed words were crossed through with a pencil or pen and a question mark was inserted after them. There is no evidence Gellens-Stubbs did the editing, and in any case, it does not evidence she knew before the close of escrow the stucco cracks indicated any problem.[8] As discussed earlier, the Robinsons' own home inspector and experts could not say they were other than normal shrinkage cracks.

Only relevant evidence is admissible (Evid. Code, § 350), and the court has discretion to exclude relevant evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) As discussed, the evidence the Robinsons sought to introduce shed no light on the issues of whether Prudential and Gellens-Stubbs fraudulently or negligently concealed the property's true condition, and certainly, even if there were remote relevance, the court did not abuse its discretion in excluding it.

C

*Attorney Fees Award*

Attorney fees, when authorized by contract, are an allowable item of costs to the prevailing party. (Code Civ. Proc., §§ 1032, subd. (b), 1033.5, subd. (a)(10).) "Allowable costs shall be reasonably necessary to the conduct of

---

[8]Prudential and Gellens-Stubbs assert both Gellens-Stubbs and her supervisor, Carol Cianfarani, testified at deposition they were unaware who edited Helm's suggested letter. Those transcripts were not introduced below, however, and thus are not in the record on appeal.

the litigation rather than merely convenient or beneficial to its preparation," and "shall be reasonable in amount." (Code Civ. Proc., § 1033.5, subds. (c)(2) and (3).) "Any claim not based upon the court's established schedule of attorney's fees for actions on a contract shall bear the burden of proof." (Code Civ. Proc., § 1033.5, subd. (c)(5).)

While Grossman represented herself at trial, she brought a motion to recover attorney fees incurred before trial. In support, Grossman submitted the declaration of John B. Campbell, in which he stated: "I was retained to represent Mr. HELM and Ms. GROSSMAN . . . on December 30, 1991. [I] continued to represent the interests of Mr. HELM and Ms. GROSSMAN until [I was] later replaced by attorney Evan Gould. That substitution was filed in or about August 1, 1992. Over the relevant time period, [my] firm incurred professional fees and costs in the total dollar amount of $9,956.83 in defending Mr. HELM and Ms. GROSSMAN. As of this date, [my] firm has been paid $6,000 by Ms. GROSSMAN for that legal representation—leaving a total unpaid balance of $3,956.83."

Evan A. Gould provided a letter stating: "[M]y arrangement with Anne Marie Grossman was essentially a flat rate of $5,000, which encompassed all work pre-trial. . . . [¶] I have reviewed my accounting records and they . . . reflect the fact that Ms. Grossman paid to me . . . the sum of $5,000 and approximately $1,001.72 in costs."

The court awarded Grossman the entire $6,001.72 billed by Gould, and $4,978.41, or one-half, of the amount billed by Campbell, for a total of $10,981.13. The Robinsons contend the award was an abuse of discretion because Gould's letter was not signed under penalty of perjury and thus had no evidentiary value, and neither Gould nor Campbell itemized their services.

A written declaration supporting a motion must be signed under penalty of perjury (Code Civ. Proc., § 2015.5) and Gould failed to do so. However, there is no evidence the Robinsons objected at the trial court to either the Gould letter or the lack of itemization by Gould and Campbell. They filed a memorandum of points and authorities in opposition to the motion, but it did not address the Gould letter or the Campbell declaration because Grossman had not yet filed them. Shortly before the hearing on the motion, the Robinsons' counsel prepared a written objection to evidence addressing these issues, but there is no showing it was ever filed with the court. Further, the Robinsons did not object during the hearing on the motion. Issues not presented to the trial court are waived on appeal (*Royster* v. *Montanez* (1982) 134 Cal.App.3d 362, 367 [184 Cal.Rptr. 560]); a party may not ordinarily

change the theory of his or her case for the first time on appeal. (*Panopulos v. Maderis* (1956) 47 Cal.2d 337, 340 [303 P.2d 738].)

We also reject the Robinsons' argument the court erred in awarding Grossman $1,001.72 in costs billed by Gould, because she failed to timely file a memorandum of costs. A prevailing party must file a memorandum of costs within 15 days of service of notice of entry of judgment. (Cal. Rules of Court, rule 870(a)(1).) If service of the notice is by mail within California, the period within which the memorandum must be filed is extended by five days. (Code Civ. Proc., § 1013, subd. (a).) Prudential and Gellens-Stubbs mailed notice of entry of judgment to Grossman on December 2, 1993, and Grossman served and filed her papers on December 21, 1993, within the allowable time.[9]

## Disposition

The judgment and order are affirmed. Prudential, Gellens-Stubbs and Grossman to recover costs on appeal from the Robinsons.

Nares, J., and McDonald, J., concurred.

---

[9]The copy of Grossman's motion in the record is not file-stamped; however, the Robinsons admit in their opposition to the motion that she served her papers on December 21, 1993.