Jay W. MYHRAN, Plaintiff-Appellee,

v.

JOHNS–MANVILLE CORPORATION,
et al., Defendants,

and

Fibreboard Corporation and Raymark
Industries, Inc.,
Defendants-Appellants.

Nos. 82–3660, 82–3661.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 1984.

Decided Aug. 27, 1984.

Raymond J. Conboy, Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, Or., for plaintiff-appellee.

Philip A. Talmadge, Karr, Tuttle, Koch, Campbell, Mawer & Morrow, John G. Cooper, Stafford, Frey & Mertel, Seattle, Wash., for defendants-appellants.

Before WRIGHT and HUG, Circuit Judges, and ORRICK,* District Judge.

HUG, Circuit Judge:

Raymark Industries, Inc. and Fibreboard Corporation appeal from a judgment awarding Jay W. Myhran compensatory damages against Raymark and Fibreboard and punitive damages against Raymark. Myhran had developed asbestosis, and he alleged that his exposure to asbestos products in the course of employment had caused him personal injury. The district court tried this case in admiralty without a jury. The dispositive issue in this case is whether Myhran's tort claims bear enough of a relationship to traditional maritime activity to justify the exercise of admiralty jurisdiction. We reverse because the district court lacked admiralty jurisdiction.

I

This is a products liability case against the manufacturers of asbestos products for damages suffered from the exposure to asbestos dust over a period of 18 to 20 years. The district court found that the overwhelming portion of Myhran's exposure to asbestos-containing products occurred while he was employed as a pipefitter engaged in the repair and renovation of vessels on navigable waters. Myhran's job required that he remove insulation materials before working on pipes. These materials contained asbestos, asbestos cement, and asbestos cloth. Myhran's work tearing out insulation caused asbestos fibers to be circulated in the air. In 1980, Myhran discovered that he was suffering from asbestosis, and he subsequently underwent a thoracotomy.

Myhran filed suit seeking recovery in strict products liability against 29 manufacturers and sellers of asbestos and asbestos products. Federal jurisdiction was initially based on diversity of citizenship, but Myhran was allowed to amend his complaint to add admiralty as an additional basis of jurisdiction. Just prior to trial, all but three of the defendants settled with Myhran and were dismissed from the case. At the commencement of trial, Myhran moved to dismiss all nonadmiralty claims against Johns-Manville, Fibreboard, and Raymark. We are unable to determine from the record the status of the nonadmiralty claims, but the district court directed that the remaining claims against these defendants be tried in admiralty. The district court found Johns-Manville, Fibreboard, and Raymark liable for compensatory damages. The court also found Johns-Manville and Raymark liable for punitive damages. Shortly before judgment was entered, Johns-Manville initiated bankruptcy proceedings. The district court therefore entered judgment only against Fibreboard and Raymark.

II

Historically, admiralty jurisdiction in tort cases depended upon the locality of the wrong. If the tort occurred upon the high seas or navigable waters, the tort action was within admiralty jurisdiction. *The Plymouth*, 70 U.S. (3 Wall.) 20, 35–36, 18 L.Ed. 125 (1866). In *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), however, consideration of the peculiar results from the mechanical application of the locality test led the Supreme Court to reject maritime locality as the sole criterion for admiralty jurisdiction. The Supreme Court noted the absurdity of invoking admiralty jurisdiction for torts with a maritime locality, but absolutely no connection to maritime activity. *Id.* at 255–256, 93 S.Ct. at 498 (disapproving decisions sustaining admiralty jurisdiction over claims by swimmers injured by other swimmers or by submerged objects in shallow waters near shore). Therefore, the Supreme Court held that maritime locality alone was insufficient to invoke admiralty jurisdiction. In addition, the Court held it was necessary that "the wrong bear a significant relation-

* The Honorable William H. Orrick, Jr., United States District Judge for the Northern District of California, sitting by designation.

ship to traditional maritime activity." *Id.* at 268, 93 S.Ct. at 504.

*Executive Jet* involved a suit for property damage to a jet that struck a flock of seagulls upon takeoff and sank in the navigable waters of Lake Erie. In applying this additional requirement, the Supreme Court considered the history and purpose of admiralty law:

> The law of admiralty has evolved over many centuries, designed and molded to handle problems of vessels relegated to ply the waterways of the world, beyond whose shores they cannot go. That law deals with navigational rules—rules that govern the manner and direction those vessels may rightly move upon the waters. When a collision occurs or a ship founders at sea, the law of admiralty looks to those rules to determine fault, liability, and all other questions that may arise from such a catastrophe. Through long experience, the law of the sea knows how to determine whether a particular ship is seaworthy, and it knows the nature of maintenance and cure. It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage.

*Id.* at 269–270, 93 S.Ct. at 505.

Although the *Executive Jet* case involved an aviation tort claim, the Court in *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 674, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982) made clear that the principle was not limited to aviation cases, but was applicable to admiralty cases in general. Emphasizing the need for certainty in the protection of maritime commerce and the need for uniform rules governing navigation, the Supreme Court in *Foremost Insurance* found that a tort claim involving the negligent operation of a noncommercial vessel had a sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction in the district court. *Id.* at 674–677, 102 S.Ct. at 2658–2660. The Supreme Court's analysis in *Executive Jet* and *Foremost Insurance* provides the basis for evaluating whether the district court prop-erly invoked admiralty jurisdiction in this case.

### III

Since Myhran was exposed to asbestos products during the repair of vessels floating on navigable waters, the locality requirement is satisfied. Admiralty jurisdiction in this case turns on whether Myhran's exposure to asbestos products bears a significant relationship to traditional maritime activity.

We recently considered whether tort claims arising out of exposure to asbestos products during construction of ships floating on navigable waters satisfied the maritime relationship requirement of admiralty jurisdiction. *Owens-Illinois, Inc. v. United States District Court*, 698 F.2d 967 (9th Cir.1983) (per curiam). In *Owens-Illinois*, we indicated that four factors must be considered in determining whether an alleged tort bears a significant relationship to traditional maritime activity: "(1) traditional concepts of the role of admiralty law; (2) the function and role of the parties; (3) the types of vehicles and instrumentalities involved; and (4) the causation and nature of the injury suffered." *Id.* at 970. We noted the traditional distinction in admiralty between construction and repair contracts and determined that exposure to asbestos products during the construction of ships lacked the "maritime flavor" necessary to invoke admiralty jurisdiction. *Id.*

Myhran's injury arose out of asbestos exposure during the repair of ships; however, to uphold admiralty jurisdiction by applying a mechanical analysis based solely on the distinction between repair and construction of ships would be inconsistent with the Supreme Court's analysis in *Executive Jet*. Although the traditional distinction between contracts for construction versus contracts for repair of ships that was noted in *Owens-Illinois* added support to the conclusion reached there, that distinction alone cannot be determinative. As pointed out in a factually similar case in the First Circuit, the traditional contractual distinction may shed light on the nature of

the injured worker's activity and may thus be relevant to the inquiry required by *Executive Jet;* but the inquiry must be broader and must be based upon the work actually performed by the injured worker. *See Austin v. Unarco Industries, Inc.,* 705 F.2d 1, 10 n. 4, 12 n. 5 (1st Cir.), *cert. dismissed,* —— U.S. ——, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983). The issue is whether Myhran's tort claims bear a significant relationship to traditional maritime activity— not whether the tort occurred during the repair as opposed to the construction of ships. We therefore proceed to consider fully the four factors listed in *Owens-Illinois* to resolve this issue. Our analysis of the four factors indicates that Myhran's claims are not cognizable in admiralty.

■ First, the Supreme Court's discussion of the history and purpose of admiralty law in both *Executive Jet* and *Foremost Insurance* suggests that admiralty law is not concerned with tort claims such as those of Myhran. None of the issues listed by the Supreme Court in *Executive Jet* are involved in Myhran's suit. Rather, as the Eleventh Circuit observed in a case factually similar to this case, "the issues that this litigation presents are identical to those presented in countless other asbestos suits; they involve questions of tort law traditionally committed to local resolution." *Harville v. Johns-Manville Products Corp.,* 731 F.2d 775, 786 (11th Cir.1984). Resolution of Myhran's tort claims does not require the special expertise of a court in admiralty as to navigation or water-based commerce, nor is there any federal interest in uniformity of decision requiring the application of federal substantive law. *See Owens-Illinois,* 698 F.2d at 971.

■ Second, Myhran's "function and role" as a pipefitter in shipyards does not justify admiralty jurisdiction over his tort claims. While personal injuries to seamen and others doing seamen's work do fall within the traditional concerns of admiralty law and are claims over which admiralty tort jurisdiction would be proper, Myhran was not a seaman, nor did he perform work traditionally done by seamen. *See Har-*

*ville,* 731 F.2d at 785 ("The plaintiffs here were engaged in trades, such as pipefitting, welding, and insulating, linked more with the land than with the sea. Their skills and training are those of landsmen, not of sailors."); *see also Owens-Illinois,* 698 F.2d at 970–971 (installing and cleaning up around the installation of asbestos is not a maritime role); *cf. Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 99, 66 S.Ct. 872, 879, 90 L.Ed. 1099 (1946) (a stevedore is entitled to the seaman's traditional and statutory protections because he is doing a seaman's work and incurring a seaman's hazards).

■ Third, although Myhran was exposed to asbestos aboard ships, the involvement of the ships is at most tangential to the nature of Myhran's tort claims. Apart from the advantages of admiralty jurisdiction, Myhran's claims would be exactly the same if all of his exposure to asbestos occurred during the construction of ships or during the construction or repair of buildings on land. *See Harville,* 731 F.2d at 785. Our observations in *Owens-Illinois* with regard to this factor are directly on point:

> While ships were obviously involved here, the tools and safety equipment (or lack thereof) present in the installation and clean-up of asbestos—unlike the navigational equipment and safety devices of a vessel—possess few maritime attributes. The use of masks, unlike the provision of lifeboats, is hardly a precautionary measure distinctively connected to traditional maritime activity.

698 F.2d at 971. The relationship of maritime vehicles and instrumentalities to Myhran's tort claims is too attenuated to justify admiralty jurisdiction.

■ Finally, exposure to asbestos does not bear any inherent relationship to maritime activity, nor is it unique to maritime service. Rather, asbestos-related injuries affect thousands of land-based workers as well who have no relationship to maritime activity. As we noted in *Owens-Illinois:*

Both the injury and its cause are far more closely affiliated with the clearly land-based negligence arising in the construction industry generally than with negligence taking place in commerce and navigation on the navigable waters.

*Id.* The happenstance that Myhran was exposed to asbestos aboard a ship does not transform exposure to asbestos into a maritime hazard.

### IV

We conclude that Myhran's tort claims do not bear a significant relationship to traditional maritime activity. Therefore, the district court lacked admiralty jurisdiction.

REVERSED and REMANDED.