**In re ALL ASBESTOS CASES.**

**Civ. No. 79–0382, et al.**

United States District Court,
D. Hawaii.

Oct. 10, 1984.

Amended on Denial of Reconsideration
Nov. 23, 1984.

Gary O. Galiher, Stanford H. Masui, L. Richard DeRobertis, Gary Galiher & Associates, Honolulu, Hawaii, for plaintiffs.

Paul Devens, Paula Devens, James H.Q. Lee, Ikazaki, Devens, Lo, Youth & Nakano, Honolulu, Hawaii, for defendant and third-party plaintiff Raymark Industries, Inc., Successor to Raybestos-Manhattan, Inc.

William S. Hunt, Lawrence C. Foster, Paul, Johnson & Alston, Honolulu, Hawaii, Jeffrey Silberfeld, Charles J. Israel, Robert Rizzo, Rivkin, Leff, Sherman & Radler, Garden City, N.Y., for defendant and third-party plaintiff Pittsburgh Corning Corp.

Michael F. O'Connor, Brian K. Yomono, Ezra, O'Connor & Moon, Honolulu, Hawaii, William J. Spriggs, Joe G. Hollingsworth, Donald W. Fowler, Edward M. Fogarty, Spriggs, Bode & Hollingsworth, Washington, D.C., for defendant and third-party plaintiff Eagle-Picher Industries, Inc.

Mark Bernstein, Honolulu, Hawaii, for defendant and third-party plaintiff Flexitallic Gasket Co., Inc.

Richard K. Willard, Acting Asst. Atty. Gen., Peter A. Nowinski, Sp. Litigation Counsel, Torts Branch, Harold Engel, Asst. Director, Torts Branch, Paul M. Honigberg, Trial Atty., Torts Branch, David Fishback, Trial Atty., Torts Branch, U.S. Dept. of Justice, Washington, D.C., Daniel A. Bent, U.S. Atty., Theodore G. Meeker, Sp. Asst. U.S. Atty., Honolulu, Hawaii, for third-party defendant U.S.

## MEMORANDUM DECISION AND ORDER

TASHIMA, District Judge, Sitting by Designation.

This is the motion of third-party defendant United States to dismiss the third-party complaints. The first of these was filed by defendant Raybestos-Manhattan, Inc., in December 1981. Similar complaints were later filed by defendants Pittsburgh Corning Corporation, Eagle-Picher Industries, Inc., and Flexitallic Gasket Company, Inc. (collectively "third-party plaintiffs" or "manufacturers"). The government's motion is supported by plaintiffs.

The third-party complaints derive from the approximately 90 consolidated actions in this district, brought primarily by more than 100 present and former government employees, or their survivors, against third-party plaintiffs and approximately 35 other manufacturers of products containing asbestos. Plaintiffs allege that they have developed asbestos-related diseases as a result of their exposure to asbestos-containing products used at the government facilities where most plaintiffs worked.[1] Plaintiffs allege that the manufacturers sold the products to the United States for use at federal facilities, that the manufacturers were negligent in designing and producing these products, that the products were defective and unsafe, and that the manufacturers failed to give adequate warnings of known or knowable dangers and/or failed to find safe substitutes.

The third-party complaints against the United States seek contribution and/or indemnity based on tort, contract and, in some cases, admiralty law theories. Jurisdiction is premised on the Federal Tort Claims Act, 28 U.S.C. §§ 1346 & 2671 *et seq.* ("FTCA"), the Tucker Act, 28 U.S.C. § 1346(a)(2), the Suits in Admiralty Act, 46 U.S.C. § 741 *et seq.*, and the Public Vessels Act, 46 U.S.C. § 781 *et seq.*

Although the United States has moved, in the alternative, for summary judgment, it has submitted no evidentiary material in

---

1. Out of a total of 127 plaintiffs, 118 allege that they were exposed to asbestos-containing thermal insulation products used on board ships while they were federal civilian employees, employed at Pearl Harbor Naval Shipyard ("Pearl Harbor"). Others were federal civilian employees at Hickam Air Force Base (*Lopez,* Civil No. 84–0122; *Carvalho,* Civil No. 80–0473) or Schofield Barracks (*Shimada,* Civil No. 80–0382).

Most of the remaining plaintiffs were employed by civilian insulation companies as "outside insulators" (*Tacub,* Civil No. 83–0368; *Kanemori,* Civil No. 80–0464; *Penn,* Civil No. 80–0472; *Frederick,* Civil No. 80–0471; *Plunkett,* Civil No. 80–0467). Finally, *Ito,* Civil No. 83–1279, involves alleged exposure to a brake and clutch mechanic employed in the private sector.

support of its motion. Therefore, the motion will be considered exclusively under F.R.Civ.P. 12(b). As explained below, the motion will be granted in part and denied in part.

## I. FEDERAL TORT CLAIMS ACT

■ The manufacturers assert that the Court has subject matter jurisdiction under the FTCA over their third-party tort claims against the United States for indemnification and contribution. Under that act, the government is liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).[2] It is undisputed that the acts

and omissions complained of occurred in Hawaii. Thus, the applicable substantive law is that which the state courts of Hawaii would apply in an analogous case involving private parties. *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).[3]

### A. *Longshoremen's and Harbor Workers' Compensation Act*

All parties, save one, agree that the applicable substantive law with respect to potential liability to those plaintiffs who were or are shipyard workers at Pearl Harbor is the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*[4] 33 U.S.C. § 903

---

**2.** Similarly, 28 U.S.C. § 2674 provides that "The United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances...."

**3.** It is not disputed that all plaintiffs who are former or current federal civilian employees are covered for work-related injuries by the Federal Employees' Compensation Act, 5 U.S.C. § 8101 *et seq.* ("FECA"). Direct suits by these plaintiffs against the United States would be barred by FECA's exclusivity provision. 5 U.S.C. § 8116.

In *Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 103 S.Ct. 1033, 1038, 74 L.Ed.2d 911 (1983), the Supreme Court held that § 8116 "does not directly bar a third-party indemnity suit against the United States." *Lockheed* did not affirmatively confer upon third parties an indemnity remedy against the United States; rather, as the Court made clear, the existence of such a remedy is governed by the "underlying substantive law." *Id.* 103 S.Ct. at 1037–38 n. 8. Although in *Lockheed,* the Court was concerned only with a third-party indemnity claim, it is clear that the holding is equally applicable to third-party contribution claims. *See In re All Maine Asbestos Litigation,* 589 F.Supp. 1571 at 1574 n. 1 (D.Me.1984); *Johns-Manville Sales Corp. v. United States,* No. C–81–4561, slip op. at 10 (N.D.Cal. Jan. 6, 1984), *reprinted in Asbestos Litigation Reporter* 7,721, 7,724 (Jan. 20, 1984).

Here, under FECA, the applicable underlying substantive law of indemnity and contribution is the law which Hawaii courts would employ in analogous suits involving private parties. To the extent the government or plaintiffs argue that FECA's exclusivity provision precludes such application of the underlying substantive law of indemnity or contribution, the argument is rejected.

**4.** Third-party plaintiff Eagle-Picher argues that, in light of *Lockheed, no* federal or state workers'

compensation statute should apply in these actions. First, it notes that Congress excluded from the LHWCA's coverage, injuries "to an officer or employee of the United States or any agency thereof." 33 U.S.C. § 903(a)(2). Consequently, it argues, a "private individual in like circumstances" to the government in this action is not, as the government contends, a private employer covered by the LHWCA but not FECA, but rather is a tortfeasor who is not insulated from third-party claims by *any* workers' compensation scheme. Eagle-Picher also contends that analysis of third-party liability should be made according to federal rather than state law. *See Travelers Ins. Co. v. United States,* 493 F.2d 881 (3d Cir.1974); *Wallenius Bremen v. United States,* 409 F.2d 994 (4th Cir.1969). I understand but reject the argument.

The FTCA provides that the United States will only be liable as if a "private person." Therefore, provisions of workers' compensation statutes, such as § 903(a)(2) of the LHWCA, which exclude coverage of federal employees, are inapplicable in the analysis. Further, inviting this Court to analogize to a private party not covered by workers' compensation laws applicable to private parties would be to ask the Court to apply the principles of indemnity and contribution in a vacuum of substantive law. This is both infeasible and contrary to the intent of Congress in enacting the FTCA to determine liability "in accordance with the law of the place where the act or omission occurred." *Giannuzzi v. Doninger Metal Products,* CV 585 F.Supp. 1306, 1308 (W.D.Pa. May 16, 1984). Finally, even assuming, as Eagle-Picher argues, that third-party liability should be determined "according to federal law," the most recent federal law on the subject of third-party liability under the FTCA is *Lockheed.* There, the Court clearly indicated that the "underlying substantive law" in the state where the act or omission occurred is to be applied. *See* Note 3, *ante.*

provides for compensation under the LHWCA "in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States." 33 U.S.C. § 902 defines an "employee" covered under the Act as

> any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor worker, including a ship repairman, shipbuilder and shipbreaker

and an "employer" covered under the Act as

> an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing or building a vessel).

It is not disputed that these definitions encompass employment at Pearl Harbor.

Although in Hawaii, private employees normally are covered for work-related injuries by the Hawaii Workers' Compensation Law, Haw.Rev.Stat. § 386–1 *et seq.* (the "Hawaii Law"), the Hawaii Law by its own terms applies only "to employees in maritime employment and their employers *not otherwise covered by the laws of the United States.*" *Id.* § 386–7 (emphasis added.) Thus, Hawaii courts would apply the LHWCA in respect to those employees covered by that Act, irrespective of the Hawaii Law, and would be bound to apply federal law to determine the merits of claims under the LHWCA. *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 166 n. 13, 101 S.Ct. 1614, 1621 n. 13, 68 L.Ed.2d 1 (1981) (Congress anticipated that questions

arising in LHWCA cases "shall be determined as a matter of federal law"); *Johnson v. A/S Ivarans Rederi*, 613 F.2d 334 (1st Cir.1980), *cert. dismissed*, 449 U.S. 1135, 101 S.Ct. 959, 67 L.Ed.2d 325 (1981).

The United States notes that as a private maritime employer, liability to its employees would be governed by the exclusivity provision of the LHWCA. That section provides:

> The liability of an employer ... shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death....

33 U.S.C. § 905(a). The government asserts that § 905(a) also bars third-party suits against it under the LHWCA. The difficulty with accepting this position is that it runs counter to the reasoning in *Lockheed Aircraft Corporation v. United States*, 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911, that exclusivity provisions, such as those under FECA and LHWCA, are not concerned with the rights of unrelated third parties who do not benefit from the "quid pro quo" compromise that these workers' compensation systems embody. Indeed, in its analysis of the exclusivity provision of FECA, the Court analogized to the LHWCA: "This compromise [embodied in the FECA exclusivity provision] is essentially the same as that found, for example, in the Longshoremen's and Harbor Workers' Compensation Act...." *Lockheed*, 103 S.Ct. at 1036. On the question of legislative intent in enacting the LHWCA's exclusivity provision, the Court paraphrased its earlier decision in *Weyerhaeuser S.S.*

---

*Lockheed* held that third-party claims under the FTCA are not barred by the exclusivity provision of FECA, reasoning that the "quid pro quo" compromise embodied in the federal employee compensation system was intended to govern "only the rights of employees, their relatives, and people claiming through or on behalf of them." 103 S.Ct. at 1037. Congress was not concerned with the rights of "unrelated third

parties." *Id.* To be sure, such reasoning could be applied to other workers' compensation systems. However, the Court did not purport to evaluate other systems; rather, it merely held that FECA's exclusivity provision did not *preclude* third-party actions and expressly indicated that the availability of such actions is governed by the underlying substantive law.

*Co. v. United States,* 372 U.S. 597, 601, 83 S.Ct. 926, 929, 10 L.Ed.2d 1 (1963):

> There is no evidence whatever that Congress was concerned with the rights of unrelated third parties, much less of any purpose to disturb settled doctrines of [tort] law affecting the mutual rights and liabilities of private [parties] in [indemnity] cases.

*Lockheed,* 103 S.Ct. at 1037.

■ It is thus apparent that the Court reasoned, albeit in *dicta,* that the LHWCA's exclusivity provision, like that of FECA, does not preclude third-party claims, and that the availability of such claims is governed by the underlying law of contribution and indemnity.[5] We pro-

ceed to an examination of the underlying substantive law.

### 1. Third-Party Claims for Contribution

#### (a) *Negligence as vessel owner*

One basis of third-party liability for contribution is provided by the LHWCA. Recently, the Supreme Court held that, under 33 U.S.C. § 905(b), as amended,[6] an LHWCA employee who is injured by the negligence of a vessel owner-employer may receive compensation under the Act *and* sue the employer in its capacity as vessel owner for negligence. *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983).[7] The

---

5. The government's reliance on *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.,* 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952), and subsequent cases interpreting *Halcyon,* is misplaced. In *Lockheed,* the Court stated with respect to these cases:

> Since the validity of the substantive indemnity claim is not before us, the LHWCA cases on which the dissent relies ... are entirely irrelevant. In *Halcyon* ... decided 11 years before *Weyerhaeuser,* the Court merely held that a substantive right of contribution did not exist in the circumstances of that case. *The Court explicitly left open the issue whether such a right to contribution, if it were to exist, would be subject to LHWCA's exclusive liability provision.*

*Lockheed,* 103 S.Ct. at 1037–38 n. 8 (emphasis added).

6. 33 U.S.C. § 905(b) provides:

> In the event of injury to a person covered under this chapter by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provision of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel.... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

7. The government contends that the 1972 amendment to the LHWCA exclusivity provision and its legislative history indicate that the provision is intended to bar third-party suits against employers. Supreme Court *dicta* rejects this argument:

> The most relevant changes since *Weyerhaeuser* have been in the LHWCA Amendments of 1972, 88 Stat. 1251. While these changes are illuminating, they do not help the Government's position. Under the amended LHWCA, an injured longshoreman's employer is no longer liable to a shipowner for tort damages that the shipowner has paid the employee. See 33 U.S.C. § 905(b). Congress thus overruled the result in *Ryan [Stevedoring Co. v. Pan-Atlantic S.S. Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956)], and abolished the shipowner's indemnity action. But in so doing, Congress also abolished the injured employee's seaworthiness remedy against the shipowner—a strict-liability action that the Court had recognized in *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). *In other words, Congress abolished the third-party indemnity action only in conjunction with a "quid pro quo" to benefit the third parties.* Here there has been no FECA amendment to abolish the third-party indemnity action recognized in *Weyerhaeuser.* The Government nevertheless invites us to abolish the action without the benefit of an amendment. We are requested to do this even though Congress has provided no "quid pro quo" as it thought appropriate in the LHWCA context. We decline the invitation.

*Lockheed,* 103 S.Ct. at 1038 (emphasis added). It is evident from this language that the Court has given a narrower interpretation to the compromise enacted in § 905 than that urged by the United States. The exchange of the strict liability "warranty of seaworthiness" claim for the

cases of many of the plaintiffs employed at Pearl Harbor involve alleged asbestos-related injuries which occurred on ships owned by the United States.

Claims for vessel owner negligence under § 905 were delineated in *Scindia*, where the Court held that a vessel owner may be liable in tort for injury to an LHWCA employee if the vessel owner (1) fails to warn the repairman's employer of a hidden danger that is known, or should have been known in the exercise of reasonable care, 451 U.S. at 167, 101 S.Ct. at 1622; (2) actively involves itself in repair work and negligently causes injury, *id.;* or (3) fails to intervene upon discovering a dangerous condition and the employer's failure to correct it. *Id.* at 175–78, 101 S.Ct. at 1626–28.

■■■ Contribution may be had against a person where the original plaintiff could have enforced liability against him. *See United States v. Standard Oil Co.,* 495 F.2d 911, 919 (9th Cir.1974) (holding that "contribution will lie where no statute precludes recovery from the joint tortfeasor against whom contribution is sought"). Because, if the United States had been a private employer, plaintiffs could have sued the United States for negligence as a vessel owner under *Jones & Laughlin,* these *"Scindia* claims" also are available to third-party plaintiffs as claims for contribution. *See also In re All Maine Asbestos Litigation,* 581 F.Supp. 963, 975–77 (D.Me. 1984).

#### (b) *Negligent failure of seller to warn*

■■ Third-party plaintiffs have alleged a duty of care owing to the federal employee plaintiffs by the United States as a seller of asbestos. This allegation apparently is tailored to a claim for contribution. However, the employees would be foreclosed from suing the United States directly on this tort theory under the LHWCA's exclusivity provision. Therefore, there can be

no claim for contribution, whether this claim is characterized as "negligent failure to warn," or "breach of implied warranty."

#### (c) *Strict liability for sale of asbestos*

■■ Some of the third-party plaintiffs claim that the United States, as a seller of asbestos, sold a "defective" and "unreasonably dangerous" product. These manufacturers seek contribution and/or indemnity under a strict liability theory. However, it is well established that the FTCA does not extend to claims based on strict liability. *Laird v. Nelms,* 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972); *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). Consequently, these claims must be dismissed.

#### (d) *Breach of duties to manufactures*

■■ Certain manufacturers claim entitlement to contribution from the United States, based on duties allegedly owing to *them.* However, as indicated above, the right to contribution from a joint tortfeasor depends on whether there is potential liability to the original plaintiffs. Therefore, these claims also will be dismissed.

#### 2. Third-Party Claims for Indemnity

Courts have used various terms to distinguish between the grades of faults attributable to the participating wrongdoers so as to justify the imposition of the entire loss on the one who is regarded as the principal offender. Tort or "equitable" indemnity will be recognized when the indemnitor is guilty of "active," "primary" or "original" fault, as opposed to the merely "passive," "secondary," or "implied" fault of the indemnitee. *See, e.g., White v. Johns-Manville Corp.,* 662 F.2d 243 (4th Cir.1981).

■■ The right to indemnification is invoked where the indemnitee has been held absolutely liable for the wrongful acts of another, *e.g.,* where liability is based solely

---

indemnity action against the LHWCA employer did not persuade the Court that Congress intended to outlaw third-party suits in the FECA context. The language also suggests that the

Court considered § 905(b) to apply to a limited class of third-party vessel owners in their relationship with LHWCA employers.

on respondeat superior, the bailor-bailee relationship, or ownership of property (for injury resulting from a dangerous condition created by a third party). *See Restatement of Restitution,* §§ 94–96 (1936); *White v. Johns-Manville,* 662 F.2d at 249.[8] Further, indemnity is available where the indemnitee was induced to act by misrepresentations by or directions of the indemnitor.[9] The right is also recognized where the indemnitee has without fault or only through passive negligence failed to discover a dangerous condition created by the indemnitor.[10]

Here, third-party plaintiffs' allegations "simply do not invoke—except perhaps in conclusory legal terms which may properly be disregarded—any of these theories of indemnification based upon 'primary' as opposed to 'secondary' fault." *White v. Johns-Manville,* 662 F.2d at 249. Successful assertion of plaintiffs' claims against the manufacturers will result from the fact that the trier of fact has determined that their tortious conduct proximately caused plaintiffs' injuries. As the Fourth Circuit stated in similar asbestos litigation:

> Whether in that process [the manufacturers] are adjudged to have breached a duty to warn or an implied warranty, or whether they are held strictly liable, they would not then—under any conceivable circumstances—be able to characterize their resulting liability as being based upon technical, passive or secondary fault in relation to the fault they charge [to third-party defendant] in their third party complaint.

*Id.* at 250.

■ Thus, the manufacturers have no claim for non-contractual indemnification against the United States.

8. *E.g., Simpson Timber Co. v. Parks,* 390 F.2d 353 (9th Cir.1968) (shipowner liable on unseaworthiness claim, awarded indemnity against third party whose negligence caused unsafe condition resulting in injury to seaman).

9. *E.g., Radcliffe v. Hilton Inn,* 119 Ariz. 306, 580 P.2d 767 (1978); *Gardner v. Murphy,* 54 Cal. App.3d 164, 126 Cal.Rptr. 302 (1975).

10. *See generally,* Restatement (Second) of Torts § 886B (1979). *Cf. County of Alameda v. South-*

**B.** *Hawaii Workers' Compensation Law*

Those plaintiffs not employed at Pearl Harbor *i.e.,* not conceivably employed upon "navigable waters of the United States," are not covered by the LHWCA. 33 U.S.C. § 902. Thus, those plaintiffs and their employers would be covered by the Hawaii Law, if the employers were private parties. Haw.Rev.Stat. § 386–7.

The Hawaii Law also has an exclusivity provision which provides:

> The rights and remedies herein granted to an employee or his dependents on account of a work injury suffered by him shall exclude all other liability of the employer to the employee, his legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury.

Haw.Rev.Stat. § 386–5.

■ This section has been interpreted by the Hawaii Supreme Court to preclude third-party suits for contribution for an employee's injuries. *Kamali v. Hawaiian Elec. Co.,* 54 Haw. 153, 504 P.2d 861 (1972). However, in *Kamali* the court indicated that it might recognize third-party actions between "indemnitor and indemnitee."[11] *Id.* at 159, 504 P.2d 861. The availability of indemnification under Hawaii law, as under federal law, depends on the underlying tort indemnity principles of active and passive fault. *See Lee v. Brooks,* 315 F.Supp. 729 (D.Haw.1970). As indicated, the manufacturer defendants cannot be considered as passive wrong-

*ern Pac. Co.,* 55 Cal.2d 479, 11 Cal.Rptr. 751, 360 P.2d 327 (1961) (breach of common law duty to maintain railroad grade crossing in safe condition).

11. Eagle-Picher's argument that the Court should not look to the Hawaii Supreme Court's interpretation of indemnity and contribution under the Hawaii Law is rejected for the same reasons expressed in regard to the LHWCA. *See* n. 4, *ante.*

doers if the trier of fact determines that they are liable. Therefore, indemnity also is unavailable under Hawaii law in these cases. Because neither contribution nor indemnity is available to third-party plaintiffs in respect to the claims of plaintiffs not employed upon navigable waters, the third-party claims regarding those plaintiffs must be dismissed.

In summary, third-party plaintiffs' claims under the FTCA must be dismissed, except for claims for contribution arising from the injuries to plaintiffs employed upon the navigable waters of the United States, while engaged in work on vessels, by the alleged negligence of the United States as a vessel owner.

## II. ADMIRALTY JURISDICTION

The manufacturers assert admiralty jurisdiction as an alternative basis for federal jurisdiction. The United States has waived its sovereign immunity in admiralty and maritime actions under both the Suits in Admiralty Act, 46 U.S.C. § 741 *et seq.*, and the Public Vessels Act, 46 U.S.C. § 781 *et seq.* The government argues, however, that admiralty jurisdiction does not lie in these cases.

In *Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972), the Supreme Court held that a tort action is within admiralty jurisdiction if there is a maritime locality of the injury and the injury bears a "significant relationship to traditional maritime activity." The government concedes that most of the complaints allege that plaintiffs incurred their injuries while working on ships on navigable waters. Therefore, the "maritime locality" test is met for the manufacturers' claims related to such work.

The government argues, however, that the work plaintiffs performed at Pearl Harbor does not bear a "significant relationship to traditional maritime activity," and thus fails to meet the second prong of the *Executive Jet* test. Although it involved an aviation tort claim, *Executive Jet's* analysis is applicable to admiralty cases in general. *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982).

Recently, the Ninth Circuit has twice considered the "maritime activity" test in the context of shipyard asbestos litigation. In *Owens-Illinois, Inc. v. United States District Court*, 698 F.2d 967 (9th Cir.1983) (per curiam), the court held that tort claims arising out of exposure to asbestos products during *construction* of ships on navigable waters did not satisfy the maritime relationship requirement of admiralty jurisdiction. The court indicated that four factors must be considered in determining whether an alleged tort bears such a relationship: "(1) traditional concepts of the role of admiralty law; (2) the function and role of the parties; (3) the types of vehicles and instrumentalities involved; and (4) the causation and nature of the injury suffered." *Id.* at 970. Noting the traditional distinction in admiralty between construction and repair contracts, the court determined that exposure to asbestos products during the construction of ships lacked the "maritime flavor" necessary to invoke admiralty jurisdiction. *Id.* The court did indicate in *dicta* that a contract dispute relating to the repair of a vessel lies within admiralty jurisdiction. *Id.*

More recently, in *Myhran v. Johns-Manville Corp.*, 741 F.2d 1119 (9th Cir.1984), the Ninth Circuit considered alleged asbestos exposure during the *repair* of ships on navigable waters. It rejected its own *dicta* and held that such circumstances did not invoke admiralty jurisdiction under the four-factor test of *Owens-Illinois*. First, the court found that admiralty law has not traditionally been concerned with tort claims such as those arising from the shipyard asbestos cases:

"the issues that this litigation presents are identical to those presented in countless other asbestos suits; they involve questions of tort law traditionally committed to local resolution." *Harville v. Johns-Manville Prod. Corp.*, 731 F.2d 775, 786 (11th Cir.1984). Resolution of Myhran's tort claims does not require the

special expertise of a court in admiralty as to navigation or water-based commerce, nor is there any federal interest in uniformity of decision requiring the application of federal substantive law. *See Owens-Illinois*, 698 F.2d at 971. At 1122.

Second, the court found that the "function and role" of plaintiff as a pipefitter engaged in the repair and renovation of vessels on navigable waters did not justify invoking admiralty jurisdiction over his tort claims; plaintiff "was not a seaman, nor did he perform work traditionally done by seamen." *Id.* at 1122 (citation omitted).

Third, although plaintiff's exposure to asbestos was aboard ships, the court found that

> the involvement of the ships is at most tangential to the nature of Myhran's tort claims. Apart from the advantages of admiralty jurisdiction, Myhran's claims would be exactly the same if all of his exposure to asbestos occurred during the construction of ships or during the construction or repair of buildings on land.

*Myhran*, at 1122 (citation omitted).

Finally, the court stated that "exposure to asbestos does not bear any inherent relationship to maritime activity, nor is it unique to maritime service. Rather, asbestos-related injuries affect thousands of land-based workers as well who have no relationship to maritime activity." *Id.* Quoting from *Owens-Illinois*, 698 F.2d at 971, the *Myhran* court reasoned:

> Both the injury and its cause are far more closely affiliated with the clearly land-based negligence arising in the construction industry generally than with the negligence taking place in commerce and navigation on the navigable waters.

*Id. See also, Austin v. Unarco Indus., Inc.,* 705 F.2d 1 (1st Cir.), *cert. dismissed,*

— U.S. ——, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983); *Keene Corp. v. United States,* 700 F.2d 836, 844 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

▮ It is evident that *Owens-Illinois* and *Myhran* are controlling here and preclude the exercise of admiralty jurisdiction over the third-party complaints. Third-party plaintiffs allege admiralty jurisdiction over claims against the United States for (1) contractual liability for purchase and sale of asbestos products used in "construction and/or repair of vessels; " and (2) torts arising from the United States' activities involving "construction and/or repair of vessels." [12] There is no basis in the complaints, third-party complaints or the memoranda on this motion from which to conclude that any of the plaintiffs employed at Pearl Harbor were engaged in anything other than construction and repair work involving the use of asbestos-containing products. *Myhran* is clear that injuries arising out of such work, as opposed to more traditional maritime employment, are not cognizable under maritime law. It is unnecessary to embark on an analysis of the four-part test enunciated in *Owens-Illinois*, as the pleadings and memoranda herein do not factually distinguish these cases from *Myhran*. Therefore, I conclude that the third-party admiralty claims must be dismissed for want of subject matter jurisdiction. [13]

## III. TUCKER ACT CLAIMS

▮ The manufacturers also assert claims for contractual indemnification, predicated on the Tucker Act. 28 U.S.C. § 1346(a)(2). The Tucker Act, like the FTCA, is a limited waiver by the United States of its sovereign immunity, conferring on the district courts concurrent juris-

---

**12.** Third-party complaint of defendant Raybestos-Manhattan, Inc. (Fifth through Eighth Counts). Raybestos is the only third-party plaintiff who affirmatively claims admiralty jurisdiction. The remaining third-party plaintiffs contend that *if* admiralty jurisdiction is found to apply, they are entitled to recover for all of their claims under maritime law.

**13.** Because admiralty jurisdiction does not lie over the third-party complaints, it is unnecessary to address the parties' arguments with respect to the "maritime but local" and "Good Samaritan" rules.

diction with the United States Claims Court over, *inter alia,*

> civil action[s] or claim[s] against the United States, not exceeding $10,000 in amount, founded ... upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort....

28 U.S.C. § 1346(a)(2).[14] The manufacturers' claims under the Act are three: (1) breach of implied warranties as seller; (2) breach of implied warranties to provide a safe work place and to provide specifications which were safe or "risk free" and which could be used in a safe "risk-free" manner; and (3) breach of implied contracts of which the manufacturers were third-party beneficiaries. Neither the purported warranties nor the contracts are alleged to be express. Contracts implied-in-law are not actionable under the Tucker Act. *See Hatzlachh Supply Co. v. United States,* 444 U.S. 460, 465 n. 5, 100 S.Ct. 647, 650 n. 5, 62 L.Ed.2d 614 (1980); *Merritt v. United States,* 267 U.S. 338, 45 S.Ct. 278, 69 L.Ed. 643 (1925). Claims under the Tucker Act require an agreement founded upon a meeting of the minds, which, although not necessarily embodied in an express contract, must be inferable as a fact from the conduct of the parties showing, in light of surrounding circumstances, their tacit understanding. *Hargrove v. United States,* 1 Cl.Ct. 228 (1982). Each of the manufacturers' contract claims will be analyzed under this standard.

A. *Breach of Seller's Warranties of Merchantability and Fitness for Particular Purpose*

The third-party complaints allege that the United States stockpiled asbestos and asbestos-containing products and, at certain times, sold asbestos to purchasers in the private sector, including many of the defendants in these actions. It is further alleged that the United States did not warn purchasers regarding the hazards of asbestos exposure. Third-party plaintiffs allege that by this conduct, the government breached its implied warranties of merchantability and fitness for a particular purpose, *i.e.,* that the asbestos and asbestos-containing products could be safely used. As indicated above, it is insufficient for Tucker Act purposes for this claim to be implied in law; thus, the manufacturers claim, as they must, that the United States actually, albeit impliedly, warranted that the products it sold were safe.

■ The government argues that these claims should be dismissed because the asbestos was sold "as is," without any express or implied warranty that the products were safe. However, in the posture of this motion, the government has presented no evidence which would support this conclusion; we consider here only an attack on the face of the pleadings. The government relies on *In re All Maine Asbestos Litigation,* 581 F.Supp. 963, in support of its contention. However, it is clear that the determination there was made on a summary judgment record. *Id.* at 970–71. On the "as is" Tucker Act claim, the court concluded that:

> defendants fail to point to any evidence that the United States represented that asbestos could be used safely in ship construction. To the contrary, *the uncontroverted evidence* is that the government sold the asbestos "as is" with an express disclaimer of any warranty, express or implied.

*Id.* at 972 (emphasis added). *See also, Stewart v. United States,* 486 F.Supp. 178, 184 (C.D.Ill.1980).

■ This Court cannot conclude, on the basis of the pleadings alone, that the government sold asbestos in Hawaii on the same terms as the *All Maine* court found

---

**14.** The prayers in all third-party complaints, save one, expressly limit the damages sought under the Tucker Act claims to $10,000 per plaintiff. While the third-party complaint of Raybestos-Manhattan, Inc., sets forth no specific prayer, it does allege that the Tucker Act counts "assert claims for less than $10,000." In light of that allegation, I construe the allegation in the Third and Fourth Counts that the United States "is liable to Raybestos for indemnification for all sums Raybestos may be required to pay plaintiff(s)," as being similarly limited to a claim of $10,000 per plaintiff.

with respect to sales in Maine. On this motion to dismiss, the Court cannot reach the government's factual contention, in derogation of third-party plaintiffs' allegations, that it sold asbestos and asbestos-containing products "as is." Thus, the manufacturers' claims for breach of implied warranties as seller are not subject to dismissal under Rule 12(b).[15]

### B. Breach of Implied Warranty of Specification

The manufacturers allege that the United States, by promulgating specifications requiring the use of asbestos in connection with the construction and repair of vessels at Pearl Harbor, impliedly warranted that the asbestos-containing products sold by the manufacturers, which conformed to the specifications, were safe. The manufacturers' theory appears to be that the specifications themselves create a basis of liability. In support of their position, the manufacturers rely on *United States v. Spearin*, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918), and its progeny.

These cases provide that, "When the government issues design specifications of a detailed nature ... it warrants the sufficiency and efficacy of those specifications to produce the desired product in a satisfactory manner." *Ordinance Research v. United States*, 609 F.2d 462, 479, 221 Ct.Cl. 641 (1979). However, the warranty extends only to those parties in direct privity with the government. *See Correlated Dev. Corp. v. United States*, 556 F.2d 515, 214 Ct.Cl. 106 (1977); *Housing Corp. of America v. United States*, 468 F.2d 922, 199 Ct.Cl. 705 (1972). Thus, in *Spearin*, the Court awarded damages resulting from faulty specifications to a building contrac-

tor who had contracted directly with the government for the construction of a dry dock. And, in *Ordinance Research*, the plaintiff contractor was awarded an equitable adjustment in its contract receipts on the theory that the damages it suffered as a result of explosions caused by faulty government specifications increased the price of performance under the contract.

■ The cases at bench are different in kind. Here, although the government was in privity with the contractors who performed the repair and construction work, it was *not* in privity with the manufacturers. The manufacturers merely sold the asbestos-containing products to the government; they did not perform the contracted construction work. The *Spearin* line of cases in inapposite to this litigation; the manufacturers' claims based on implied warranty for specifications will be dismissed.

To the extent that the manufacturers contend that the government impliedly agreed to indemnify them for tort liability arising out of asbestos used at Pearl Harbor and elsewhere in Hawaii, the argument is without merit. The Comptroller General consistently has taken the position that a government agent may not make any oral or written agreements to indemnify or "hold harmless" a contractor for future losses under a contract, absent specific authorization or appropriation. 35 Comp.Gen. 85 (1955); 33 Comp.Gen. 90 (1935); *see also, California-Pacific Utilities Co. v. United States*, 194 Ct.Cl. 703 (1971). Similarly, the Anti-Deficiency Act, 31 U.S.C. § 1341(a)(1)(B), provides, in relevant part, that

> An officer or employee of the United States Government or the District of Co-

---

**15.** To the extent the government relies on the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), to preclude the manufacturers' claims of breach of implied warranty as a seller, *see Gov't Memo. in Support* at 39 n. 35, that argument also must be rejected. Determining whether conduct of the government falls within the discretionary function exception requires a factual analysis of the circumstances and the government policy involved. *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* — U.S. —, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). Determina-

tion of the applicability of the exception cannot be made on the basis of the pleadings here. Some showing by the government of its policy with respect to the sale of asbestos products is required and that showing is absent. For example, in *All Maine,* the determination that the discretionary function exception applied was made on the basis of "uncontroverted evidence concerning the policy and procedures used by the government in its strategic materials stockpiling program," including the affidavits of those with first-hand knowledge of that policy and those procedures. 581 F.Supp. at 970–71.

lumbia may not ... involve either government in a contract or *obligation for the payment of money* before an appropriation is made unless authorized by law.

(Emphasis added.)

 Here, the manufacturers do not contend that any appropriation to indemnify them for tort liability was made by the government or that any law authorized a guarantee of indemnification.[16] To the extent the manufacturers argue that a tacit, mutual understanding existed between the parties which would give rise to an implied contractual right of indemnity, the argument also fails. One who deals with a government agent is charged with notice of the limits of the agent's authority. *California-Pacific Utilities, supra; Richards & Associates v. United States*, 177 Ct.Cl. 1037 (1966). Thus, even if the manufacturers could show representations on the part of government agents that the government would indemnify the manufacturers for prospective tort losses, those representations would not be binding on the government. The manufacturers' claims based on any such implied agreement to indemnify therefore must be dismissed.

#### C. *Third-Party Beneficiary Theory*

 Jurisdiction exists under the Tucker Act to adjudicate suits brought on government contracts by intended third-party beneficiaries to those contracts. *Hebah v. United States*, 428 F.2d 1334, 192 Ct.Cl. 785 (1970). However, a third-party beneficiary for purposes of the Tucker Act is a third-party expressly or impliedly intended by one of the contracting parties to be a beneficiary of the contract. *Penn Towne Builders v. United States*, 4 Cl.Ct. 677 (1984).

One third-party plaintiff alleges that there was an agreement between the United States and plaintiffs to provide the plaintiffs with a safe workplace, and that the agreement was breached by the government in various ways. Without citing any precedent, the manufacturer argues in conclusory fashion that it was a third-party beneficiary of the agreement. Because there exists no legal support for this novel theory that the manufacturer was an intended beneficiary of any employment agreements between the government and plaintiffs, the claim for indemnity as a third-party beneficiary of such a contract will be dismissed.[17]

### IV. ORDER

For the foregoing reasons, IT IS ORDERED:

1. The motion of the United States to dismiss the third-party complaints is DENIED as to:

(a) Third-party plaintiffs' claims under the Federal Tort Claims Act for contribution for injuries to plaintiffs employed upon the navigable waters of the United States, while engaged in work on vessels, caused by the alleged negligence of the United States as a vessel owner.

(b) Third-party plaintiffs' claims under the Tucker Act for the alleged breach by the government as a seller of asbestos and

---

**16.** The manufacturers argue that 31 U.S.C. § 1304(a) contradicts the government's position with respect to the Anti-Deficiency Act. However, the effect of § 1304(a) is simply that the Anti-Deficiency Act does not bar payment of valid judgments against the United States. Thus, § 1304(a) is irrelevant to the issue of whether, in these cases, the legal predicate for judgment against the government exists.

**17.** There is no allegation of an express agreement containing such a term, such as a collective bargaining agreement. It is highly doubtful, assuming that a duty existed requiring the government to provide its employees with a safe place to work, that such duty arose from an implied-in-fact contract. More importantly, the allegation that third-party plaintiff "was a third-party beneficiary of the United States' agreement to provide plaintiff(s) with a safe place to work," is nothing more than a bald legal conclusion. Even assuming, *arguendo*, that such a contract existed, nothing in the record on this motion gives rise to the slightest suggestion that material suppliers, such as third-party plaintiffs, were intended beneficiaries of such a contract.

On this claim, as on the others subject to dismissal, no contention is advanced that leave to amend would not be futile. The manufacturers do not contend that the allegations of the third-party complaints can be improved on.

asbestos-containing products of the implied warranties of merchantability and fitness for a particular purpose.

2. In all other respects, the motion of the United States to dismiss the third-party complaints is GRANTED, without leave to amend.

3. To the extent it has not already done so, third-party defendant is granted 30 days to answer the remaining claims in the third-party complaints.