962 F.2d 14
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gregory INCHAUSPE, Robert Sandoval, Keith Scott, and Thomas
Scott, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
 No. 91-15281.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 12, 1992.*
Decided May 8, 1992.
 
 1
 Before FARRIS and RYMER, Circuit Judges, and KENYON,** District Judge, sitting by designation.
 
 
 2
 MEMORANDUM***
 
 
 3
 We must decide whether 28 U.S.C. § 1333(1), which confers admiralty jurisdiction on the federal district courts, embraces this lawsuit against the United States for injuries arising from exposure to toxic chemicals aboard the U.S.S. Enterprise. We hold that it does not. We affirm.
 
 
 4
 In or before 1986, the United States Navy entered into a contract with Continental Maritime of San Francisco, Inc., for repairs and alterations of the Enterprise. Part of this contract called for an increase in air conditioning capacity aboard the Enterprise. This required the removal and replacement of a compressor on board the ship. This in turn required the removal of asbestos insulation from the pipes in the compartment in which the compressor was located, so that the pipes could be cut away to facilitate removal of the compressor.
 
 
 5
 Continental subcontracted the asbestos removal work to Western MacArthur Company. Western sent Inchauspe and his co-complainants, its employees, to perform this work in September, 1986. While so employed, they were injured by exposure to toxic refrigerant chemicals stored in the compartment in which the compressor was located.
 
 
 6
 Complainants brought this suit and received a judgment under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, et seq. The government argues that the suit is more properly characterized as an admiralty action, lying exclusively within the district court's admiralty jurisdiction. The distinction is critical because the shorter statute of limitations for admiralty suits would require dismissal of this suit as time-barred.
 
 
 7
 Torts sounding in admiralty must satisfy two criteria: they must have a maritime locus and a maritime nexus. Foremost Ins. Co. v. Richardson, 457 U.S. 668, 672-73 (1982); Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 261-68 (1972). The claim satisfies the locus requirement. The injuries occurred aboard the Enterprise while it was in a graving drydock for alterations and repairs. Repairs and alterations made in drydock are deemed not to occur upon land. The Robert W. Parsons, 191 U.S. 17, 33-34 (1903).
 
 
 8
 The district court properly held that this case does not have a maritime connection sufficient to support the exercise of admiralty jurisdiction. A distinct jurisdiction in admiralty exists to ensure the development of a uniform body of law governing commerce arising from traditionally maritime activities. The maritime nexus test is designed to ensure that admiralty jurisdiction is exercised only with respect to those activities. Owens-Illinois, Inc. v. United States District Court, 698 F.2d 967, 969-70 (9th Cir.1983). As such, the test serves as a filter to separate out those events that take place upon navigable waters but do not call upon the special expertise of admiralty courts. We consider four factors: (1) traditional concepts of the role of admiralty law; (2) the function and role of the parties; (3) the types of vehicles and instrumentalities involved; and (4) the causation and nature of the injury suffered. Myrhan v. Johns-Manville Corp., 741 F.2d 1119, 1121 (9th Cir.1984); Owens-Illinois, 698 F.2d at 970. Viewing these factors, we find that the impact of the activity in this case on maritime commerce is minimal or non-existent.
 
 
 9
 Whether we characterize the conduct as air conditioning repair, asbestos work or storage of toxic refrigerant chemicals, traditional concepts of the role of admiralty law are not implicated. The Supreme Court has noted:
 
 
 10
 [Admiralty law] deals with navigational rules--rules that govern the manner and direction ... vessels may rightly move upon the waters. When a collision occurs or a ship founders at sea, the law of admiralty looks to those rules to determine fault, liability, and all other questions that may arise from such a catastrophe. Through long experience, the law of the sea knows how to determine whether a particular ship is seaworthy, and it knows the nature of maintenance and cure. It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage.
 
 
 11
 Executive Jet, 409 U.S. at 270.
 
 
 12
 We have held that asbestos work has no traditional maritime function. Myrhan, 741 F.2d at 1122; see also Martinez v. Pacific Indus. Serv. Corp., 904 F.2d 521, 522 (9th Cir.1990) (dictum). The same is true of air conditioning repair and activity involving the storage of chemicals.
 
 
 13
 Although the injuries took place aboard a ship, we conclude, as we did in Myrhan, that "the involvement of the ship[ ] is at most tangential to the nature of [the] tort claims." Myrhan, 741 F.2d at 1122. Toxic refrigerant chemicals, the injurious instrumentality in this case, have few, if any, peculiarly maritime attributes.
 
 
 14
 For the same reasons, the causation and the nature of the complainants' injuries do not justify an exercise of admiralty jurisdiction.
 
 
 15
 The government contends that Sisson v. Ruby, 110 S.Ct. 2892 (1990), alters the analysis with respect to the scope of characterization of the relevant conduct. We reject the contention. The Sisson Court noted that it "decline[d] the invitation to refine further the test [it had] developed" in Foremost and Executive Jet. Sisson, 110 S.Ct. at 298 n. 4. Our approach is consistent with the command in Sisson to characterize the function and role of the parties "not by the particular circumstances of the incident, but by the general conduct from which the incident arose." Id. at 2897. Sisson does not require us to characterize the activity in question simply as ship repair.[1]
 
 
 16
 AFFIRMED.
 
 
 
 *
 Pursuant to Ninth Circuit Rule 34-4, the panel unanimously finds this case suitable for disposition without oral argument
 
 
 **
 The Honorable David V. Kenyon, United States District Judge for the Central District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Even if the government were correct that ship repair is the relevant activity, the relevant instrumentality in this case was engaged in the repair of air conditioning on the vessel while it was in drydock. Neither that activity, nor land-based removal of asbestos and storage of freon in connection with it, has a substantial relationship to traditional maritime activity under Foremost or Executive Jet. The leak that occurred here was not likely to disrupt commercial activity or to impede navigation in any respect